**McCARTHY & HOLTHUS, LLP**
David C. Scott, Esq. (SBN: 225893)
Rachel Opatik, Esq. (SBN: 243140)
1770 Fourth Avenue
San Diego, CA 92101
Telephone: (619) 685-4800
Facsimile: (619) 685-4811
Email:       dscott@mccarthyholthus.com
             ropatik@mccarthyholthus.com

Attorneys for Defendants,
OneWest Bank, FSB; and
Mortgage Electronic Registration Systems

FILED
CLERK, U.S. DISTRICT COURT

JUL 22 2011

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

LORENZO BENITEZ, an individual,

Plaintiff,

v.

ONEWEST BANK, FSB F/K/A
INDYMAC BANK, FSB;
INVESTORS TITLE COMPANY, a
Business Entity, form unknown;
QUALITY LOAN SERVICE CORP., a
Business Entity, form unknown;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., A
Deleware Corporation;
And DOES 1 through 50, inclusive,

Defendants.

Case No. CV 11 - 06063 JFW (JCx)

Superior Court of California,
County of Los Angeles

Superior Court Case No:
BC461756

**NOTICE OF REMOVAL**
**[28 U.S.C. § 1446(d)]**

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, Defendants ONEWEST BANK, FSB. ("OWB") and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. ("MERS") (collectively, "DEFENDANTS") hereby remove the above captioned action from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of

CA11-5475

California. DEFENDANTS are entitled to removal based on federal question jurisdiction, as follows:

1.     On May 16, 2011, an action was commenced against DEFENDANTS in the Superior Court of California, County of Los Angeles, entitled *Lorenzo Benitez vs. OneWest Bank, FSB F/K/A IndyMac Bank, FSB, et al.* as Case No. BC461756. A true and accurate copy of the Complaint in the State Court Action is attached hereto as Exhibit "1."

2.     On May 16, 2011, Plaintiffs filed a Notice of Pendency of Action ("Lis Pendens") in the Superior Court of California, County of Los Angeles. A true and accurate copy of the Lis Pendens is attached hereto as Exhibit "2."

3.     Defendant Quality Loan Service Corporation ("Quality") is named in the Complaint solely in its capacity as trustee, and not because of any wrongdoing. On July 1, 2011, Quality filed a Declaration of Nonmonetary Status pursuant to California Civil Code § 2924. Once such a declaration is filed, the other parties to the action have fifteen (15) days in which to file an objection. Cal. Civ. Code § 2924l(c). If no objection is served within that time, the trustee is completely excused from further participation in the case. Cal. Civ. Code § 2924l(d). See Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1050, 1052 (9th Cir. 2009). As such, Quality's consent is not required for removal. *Id.* A true and accurate copy of the Declaration of Nonmonetary Status is attached hereto as Exhibit "3".

4.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States. The Supreme Court has held that "a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9 (1983). Plaintiffs allege in their Causes of Action that DEFENDANTS have violated TILA (Complaint ¶¶ 66-71), Federal Regulations §226.23(a)(3) (Complaint ¶¶ 161-166),

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

2
**NOTICE OF REMOVAL**

1  Federal Regulations §3500.1 (Complaint ¶¶ 167-169), Fair and Accurate
2  Transaction Act of 2003 §221(b) (Complaint ¶¶ 170-173), and RESPA (Complaint
3  ¶¶ 240-247). Accordingly, this case turns upon federal questions, and this Court
4  has jurisdiction.

5      5.    Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental
6  jurisdiction over Plaintiffs' state and common law claims. It is well-settled that
7  federal district courts have supplemental jurisdiction over state law claims that
8  share a "common nucleus of operative facts" with a Federal claim. <u>City of Chicago</u>
9  <u>v. International College of Surgeons</u>, 522 U.S. 153, 164-65 (1997). Plaintiffs' state
10 and common law claims form part of the same case or controversy and,
11 accordingly, arise out of a common nucleus of operative facts.

12     7.    Based upon the State Court webpage, no Defendants have been served
13 with the Summons. Those named as Defendants, including DOE Defendants, that
14 remain un-served, need not join this Notice of Removal. <u>See</u> <u>Salveson v. Western</u>
15 <u>States Bankcard Ass'n.</u>, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is
16 that a party not served need not be joined; the defendants summoned can only
17 remove by themselves."). A true and accurate copy of the State Court Docket is
18 attached hereto as Exhibit "4."

19     8.    Removal to this district court is proper because this is the district that
20 embraces the county in which Plaintiff filed the state court action. 28 U.S.C. §
21 1441(a).

22     9.    As required by 28 U.S.C. §1446(d), DEFENDANTS will provide
23 written notice of removal of this action to Plaintiff and the Los Angeles County
24 Superior Court.

25 / / /
26 / / /
27 / / /
28 / / /

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA, 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

3
NOTICE OF REMOVAL

CA11-5475

**CONCLUSION**

By this Notice of Removal and the associated attachments, DEFENDANTS do not waive any objections that they may have as to service, jurisdiction or venue, or any other defenses or objections that they may have to this action. DEFENDANTS intend no admission of fact, law or liability by this Notice, and expressly reserve all defenses, motions, and/or pleas.

WHEREFORE, DEFENDANTS pray that the above action now pending against them in the Superior Court of California, County of Los Angeles as Case Number BC461756 be removed to this Court and that this Court assume jurisdiction over the action and determine it on the merits.

Dated: July 22, 2011

Respectfully submitted,
**McCARTHY & HOLTHUS, LLP**

By:   /s/ David Scott
        David C. Scott, Esq.
        Rachel Opatik, Esq.
        Attorneys for Defendants,
        OneWest Bank, FSB; and
        Mortgage Electronic Registration Systems

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA  92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

4
**NOTICE OF REMOVAL**

CA11-5475

EXHIBIT 1

LORENZO BENITEZ
10117 SEPULVEDA BOULEVARD, SUITE 207
MISSION HILLS, CA 91345
PHONE: (310) 594-2158

PLAINTIFF IN PRO PER

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 1 6 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAURYA WESLEY

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| LORENZO BENITEZ , an individual,<br><br>       PLAINTIFF,<br>   vs.<br><br>ONEWEST BANK, FSB F/K/A INDYMAC BANK, FSB; INVESTORS TITLE COMPANY, a Business Entity, form unknown; QUALITY LOAN SERVICE CORP, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>       DEFENDANTS. | Case No.:   **BC 4 6 1 7 5 6**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. DECLARATORY RELIEF;<br>2. INJUNCTIVE RELIEF;<br>3. DETERMINE NATURE, EXTENT AND VALIDITY OF LIEN;<br>4. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING<br>5. VIOLATIONS OF TILA;<br>6. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(10)(c);<br>7. VIOLATION OF CALIFORNIA CIVIL CODE § 1918-1920.1921<br>8. VIOLATION OF CALIFORNIA CIVIL CODE § 1632;<br>9. VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3);<br>10. VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10;<br>11. VIOLATION OF THE FAIR AND ACCURACTE CREDIT TRANSACTION ACT OF 2003 § 221(b);<br>12. RECISSION;<br>13. MISREPRESENTATION AND FRAUD;<br>14. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);<br>15. BREACH OF FIDUCIARY DUTY; |

16. UNCONSCIONABILITY;
17. PREDATORY LENDING UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;
18. TRESPASS;
19. CONVERSION;
20. QUIET TITLE;
21. VIOLATIONS OF RESPA;
22. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 b(2);
23. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B;
24. VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16;
25. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 a(8);
26. UNJUST ENRICHMENT;
27. FAILURE TO MODIFY LOAN-CALIFORNIA CIVIL CODE SECTION: 2923.6;
28. WRONGFUL FORECLOSURE - CALIFORNIA CIVIL CODE SECTIONS: 2924 ET SEQ., AND 2923.5 ET SEQ., TILA, HOEPA, RESPA, REGULATION Z
29. BREACH OF CONTRACT

**Unlimited Jurisdiction**

**Jury Trial Demanded**

## **INTRODUCTION**

COMES NOW the PLAINTIFF, LORENZO BENITEZ (hereinafter referred to as "PLAINTIFF"), and complains against DEFENDANTS ONEWEST BANK, FSB F/K/A INDYMAC BANK, FSB; INVESTORS TITLE COMPANY, a Business Entity, form unknown; QUALITY LOAN SERVICE CORP, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A Delaware Corporation; and DOES 1 through 50, inclusive, and alleges as follows:

**PRELIMINARY STATEMENT**

1.    This action arises out of DEFENDANTS' fraudulent schemes for improper use of PLAINTIFF'S identity, negligent and/or intentional misrepresentation of certain mortgage loans pooled together in a securitization scheme to reap profits at the expense of PLAINTIFF and other investors in certain trust funds.

2.    The loan originators and loan sellers induced PLAINTIFF into signing a cognovit note/confession of judgment, with lack of proper disclosure of the ramifications of the contract and profiteered from PLAINTIFF'S loan documents without PLAINTIFF'S knowledge and consent. The resulting loan transaction is flawed from lack of proper consideration, privity of contract and resulted in an unconscionable adhesion contract. The lender participants withheld full disclosure from PLAINTIFF, keeping PLAINTIFF'S genuine loan documents, and violated PLAINTIFF'S rights.

3.    PLAINTIFF seeks a determination of what, if any party or entity is the owner of the promissory note executed at the time of the loan closing, and whether the Deed of Trust secures any obligation of the PLAINTIFF, a mandatory injunctive relief reconveying the subject property of PLAINTIFF, or a judgment granting PLAINTIFF quiet title in the subject property, and a claim in recoupment pursuant to California commercial code : 3305 and/or 3306.

4.    PLAINTIFF seeks damages for DEFENDANTS' violations of State and Federal law regarding the mortgage industry, wrongful foreclosure, conversion, and lending industry practices causing damages to PLAINTIFF including, but not limited to, statutory duties under The California Consumer Legal Remedies Act, SECTION 1750 et seq, Truth In Lending Act 15 USC: 1601, Privacy Act Title 5 U.S.C. :552(b)(4), Fair Debt Collections Practices Act 15 USC :1692, and fundamental fiduciary duties owed to PLAINTIFF to enforce PLAINTIFF'S rights to PLAINTIFF'S home.

5.    PLAINTIFF also seeks declaratory relief, by declaration that the DEFENDANTS

have unclean hands, utilizing a combination of predatory lending practices while inducing PLAINTIFF into signing a cognovit note/confession of judgment, caused PLAINTIFF to incur damages.

6.     Based on evidence to support PLAINTIFF'S claims of violations of State and Federal law detailed herein, PLAINTIFF seeks declaratory relief to suspend or rescind any Trustee sale or resulting subsequent sale or transfer of the subject property and to void ab initio, the Adjustable Rate Note and Deed of Trust as executed in the subject loan transaction.

## PARTIES AND VENUE

7.     At all times relevant herein, PLAINTIFF was over the age of eighteen and is and was a resident of the property commonly known as 1144 East 23rd Street, Los Angeles, CA 90011, County of Los Angeles, State of California.

8.     PLAINTIFF is informed and therefore alleges that DEFENDANT ONEWEST BANK, FSB F/K/A INDYMAC BANK, FSB (hereinafter referred to as "ONEWEST"), is a federally Chartered Savings Bank authorized to do business in the State of California. ONEWEST is the original mortgage lender/table funder, servicer, and nominee/beneficiary under the loan with business addresses of: 6900 Beatrice Drive, Kalamazoo, MI 49009.

9.     PLAINTIFF is informed and therefore alleges that DEFENDANT INVESTORS TITLE COMPANY, a Business Entity, form unknown, (hereinafter referred to as "INVESTORS"), is a business entity authorized to do business in the State of California. INVESTORS was the original trustee named on the Deed of Trust in this loan transaction.

10.     PLAINTIFF is informed and therefore alleges that DEFENDANT QUALITY LOAN

SERVICE CORP, a Business Entity, form unknown (hereinafter referred to as "QUALITY"), is authorized to do business in the State of California. QUALITY is the current trustee who has been appointed to act as the agent for the Beneficiary for the Deed of Trust dated November 17, 2006.

11.　　DEFENDANT QUALITY executed and recorded a Notice of Default on June 24, 2009. The Notice of Default is appended hereto as **Exhibit "A"** and incorporated by reference. QUALITY has a business address of 2141 5th Ave, San Diego, CA 92101.

12.　　DEFENDANT QUALITY executed and recorded a Notice of Trustee's Sale on October 22, 2010. The Notice of Trustee's Sale is appended hereto as **Exhibit "B"** and incorporated by reference.

13.　　PLAINTIFF is informed and therefore alleges that DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), A Delaware Corporation, an unlicensed entity in the State of California, is listed as "acting solely as a nominee for Lender and Lender's successors and assigns". MERS is the beneficiary under this Security Instrument, and lists its address as P.O. Box 2026, Flint, MI 48501-2026.

14.　　The DEFENDANTS (each of them named in paragraphs 1 through 13 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to PLAINTIFF'S title thereto and as DOES 1 through 50 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to PLAINTIFF. These unknown DEFENDANTS and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to PLAINTIFF'S title and their claims and each of them constitute a cloud on PLAINTIFF'S title to the Subject Property. PLAINTIFF is informed and therefore believes, and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events

happening hereinafter alleged.  PLAINTIFF will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named DEFENDANTS when ascertained.

15.    PLAINTIFF is informed and therefore alleges that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed DEFENDANTS in this Complaint.  PLAINTIFF is informed and therefore alleges that each of said DEFENDANTS is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed DEFENDANTS.

16.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

17.    PLAINTIFF purportedly entered into a loan repayment and security agreement on or about, November 29, 2006 with DEFENDANT ONEWEST, which required PLAINTIFF to repay a loan of $519,200.00 to ONEWEST. ONEWEST purportedly held a First Deed of Trust on the Subject Property. This loan agreement for $519,200.00 is the subject of this litigation. The Loan was an Option ARM Loan. The Fixed/Adjustable Rider ("Note") is appended hereto and incorporated herein as **Exhibit "C"**. The starting initial interest rate of the Note was 6.625%, The initial interest rate offered was an interest only loan. Loan had an origination fee that was payable to "Broker", and a Lender fee termed as "Loan Discount Points". PLAINTIFF had an implied contract with the lender and the broker in which PLAINTIFF would understand all fees and for them to not be charged fees

not related to the settlement of the loan and without full disclosure. Yield Spread Premium was originally designed as a method to offset the costs of doing a loan by placing the borrower into a loan with an interest rate higher than what they qualified for. The

higher rate would involve the broker receiving a Yield Spread Premium that would then be "given" to the borrower as a "credit for closing costs". Since inception, the purpose of the Yield Spread Premium has been completely subverted. It is now used as a method for the broker to receive an additional compensation for doing the loan. Typically, if discovered by the borrower, she is told that the lender is paying the Yield Spread Premium, not the borrower. The PLAINTIFF was not advised that he is actually paying a higher interest rate than what he would otherwise have gotten. As a result of their mortgage activities, DEFENDANTS and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j] and with the Act's corresponding Regulation Z (hereinafter referred to as "RegZ")[24 C.F.R § 3500.1-3500.17]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; 12 Code of Federal Regulations § 226.23(a)(3); the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA") [12 U.S.C. § 2601 et.seq.]; Unfair and Deceptive Business Practices and Acts [UDAP Statutes];; and California Civil Codes § 1916.7– multiple sections; § 2079.16; § 1632; and §1918-21; and have illegally entered the Subject Property without privilege causing damage to the Subject Property and the property therein.

18.     Venue is proper since the transaction occurred in Los Angeles County and the real property in question is located within Los Angeles, in the State of California.

## JURISDICTION

19.     The transactions and events which are the subject matter of this Complaint all occurred within the County of Los Angeles, State of California.

20.     The Subject Property, is located within the County of Los Angeles, State of California.

**FACTUAL ALLEGATIONS**

21.     PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

22.     The real property which is the subject of this lawsuit is a single family residence commonly known as 1144 East 23rd Street, Los Angeles, CA 90011, with Assessors Parcel Number 5131-020-018, in the County of Los Angeles, and is more fully described in the grant deed and legal description appended hereto as **Exhibit "D"** and incorporated by reference.

23.     As a severance of the ownership and possession of the original Note and Deed of Trust has occurred and as the true owner and holder of both the original Note and Deed of Trust are unknown as a result of one or more alleged assignments and the parsed sale of certain rights under the Note to at least one third party, DEFENDANTS cannot legally foreclose without proof of claim of standing and ownership of debt.

**"The Note and the mortgage are inseparable; the formal as essential, the later as an incident. An assignment of the latter alone is a nullity. Carpenter v. Longan, 83 U.S 217, 274, (1872); accordingly Henley v Hotaling, 41 Cal. Civ. Code 2936. Therefore if one party receives the note and another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. Adler v. Sargent, 109 Cal. 42, 49-50 (1895)."**

24.     PLAINTIFF alleges that DEFENDANTS committed fraud in those DEFENDANTS

1   are not the persons entitled to enforce the alleged debt due to a lack standing and legal capacity to

2   enforce the instrument(s). DEFENDANTS' trust deed cannot be enforced as a separate interest in the

3   property to be foreclosed apart from and independent of the promissory note. Accordingly, there is

4   no right of foreclosure.

5

6       25.    DEFENDANTS are requested to stipulate that DEFENDANTS are the creditor on the

7   real property, demonstrate DEFENDANTS lawful status and standing and proceed in keeping with

8   the law. PLAINTIFF seeks to identify the real party in interest, i.e. the person legally vested with the

9   power to enforce the note as holder in due course for adequate and sufficient value paid for the note

10  for the real property, particularly in light of cognovit note-void contract.

11

12      26.    Being designated the "Lender" clearly implies ONEWEST and/or QUALITY should

13  have possession or control of the "Note and this Security Instrument" that is central to this matter.

14  Under California law, **to perfect the transfer of mortgage paper as collateral the owner should**

15  **physically deliver the note to the transferee.** Bear v. Golden Plan of California, Inc. 829 F2d 705,

16  709 (9th cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent

17

18  conveyance. Cal. Civ. Code 3440, or as unperfected, Cal. Com. Code 9313-9314 , See Roger

19  Benhardt, California Mortgage and Deed of Trusts, and Foreclosure Litigation 1.26 (4th ed. 2009).

20  The note here specifically indentified the party to whom it was payable, DEFENDANTS ONEWEST

21  and/or QUALITY, and the note therefore cannot be transferred unless the note is endorsed. See Cal.

22  Com. Code 3109, 3201, 3203, 3204. The attachments to the claim do not establish that

23

24  DEFENDANTS ONEWEST and/or QUALITY endorsed then sold the note to any other party.

25      27.    Now, either DEFENDANTS ONEWEST and/or QUALITY or as AGENT FOR

26  BENEFICIARY, MERS should be in possession of the security Instruments which were deposited

27  with Trustee.

28

28.     MERS could not be a valid beneficiary, since it had no beneficial interest, didn't have ownership status of the Loan Documents, and did not collect Payments or act as servicer in any way. (See Memorandum of Law). MERS acted only as a "nominee" under the Deed of Trust. Since no evidence has been offered that the promissory note has been transferred, MERS could only transfer whatever interest it had in the Deed of Trust However, the promissory note and the deed of trust are inseparable.

> "The note and the mortgage are inseparable; the formal as essential, the later as an incident. An assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 217, 274, (1872); accordingly Henley v. Hotaling, 41 Cal. Civ. Code 2936. Therefore if one party receives the note and another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. Adler v. Sargent, 109 Cal. 42, 49-50 (1895)."

29.     Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed. See In Re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. OHH. 2007); In re Vargas, 396 B.R. 511,520 (Bankr. C.D. Cal. 2008) ; Landmark Nat'l Bank v. Kelser, 216 p. 3d 158 (Kan. 2009) ; Lasalle Bank v. Lamy, 824 N.Y.S2d 769(N. Y. Sup. Ct. 2006). Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, it could not transfer the beneficial interest of the deed of trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law. Therefore DEFENDANTS have not established that it is entitled to assert a claim in this case.

30.     As a severance of the ownership and possession of the original Note and Deed of

Trust has occurred, and as the true owner and holder of both the original Note and Deed of Trust are unknown as a result of one or more alleged assignments, and the parsed sale of certain rights under the Note in part to at least one third party, DEFENDANTS cannot foreclose without proof of claim of standing and ownership of debt.

31.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.  The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.  All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America.  Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

32.    The loan product sold to PLAINTIFF in this case was exactly the kind of loan that has contributed to our national problem.  The DEFENDANTS were aware of this trend, and

Income Analysis, with the type of take home income PLAINTIFF possesses and that was clearly disclosed to DEFENDANTS, that PLAINTIFF would not be able to support the home payment over an extended period.

43.    PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS failed to provide PLAINTIFF with written notice of the furnishing of negative credit information to consumer reporting agency after DEFENDANTS furnished such negative credit information about PLAINTIFF.

44.    PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS failed to comply with California Commercial Code §9313 and as a result, DEFENDANTS never perfected their interest in the above referenced deed of trust.

45.    PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS breached their fiduciary duty to PLAINTIFF because they knew or should have known that the PLAINTIFF will or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

46.    PLAINTIFF is informed and believes and therefore alleges that it was in the best interest of the DEFENDANTS to promote the particular program for which they approved the PLAINTIFF. It led to a maximization of profits for the DEFENDANTS, with no concern for the PLAINTIFF'S financial position or livelihood.

47.    PLAINTIFF is informed and believes and therefore alleges that as a result of the practices of DEFENDANTS, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page 14 of 74

48.     Each subsequent DEFENDANT who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including ONEWEST and/or QUALITY, and UNKNOWN DEFENDANTS failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within.  As a result, DEFENDANTS now hold an interest in a loan that was improperly handled from its inception.

49.     PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

50.     PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS did not comply with the requirement to provide PLAINTIFF with a Mortgage Loan Origination Agreement.

51.  PLAINTIFF is informed and believes and therefore alleges that ONEWEST has placed PLAINTIFF into a loan whereby they increased the margin so as to receive a Yield spread Premium of which benefits ONEWEST over the life of the loan.  ONEWEST also failed to provide a separate fee agreement regarding Yield Spread Premium, properly disclosing this fact.   As a result ONEWEST has enjoyed the benefits of Unjust Enrichment as both the broker and the original lender.  The dual capacity that ONEWEST serves is also a breach of their fiduciary duty and was not properly disclosed.

52.     PLAINTIFF is informed and believes and therefore alleges that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the PLAINTIFF should have been declined for this loan.

53.     PLAINTIFF is informed and believes and therefore alleges that that based on a Real

Income Analysis, with the type of take home income PLAINTIFF possesses and that was clearly disclosed to DEFENDANTS, that the borrower would not be able to support the home payment over an extended period.

54.     PLAINTIFF is informed and believes and therefore alleges that ONEWEST was paid Unearned fees, which were hidden from PLAINTIFF in the form of a Yield Spread Premium which increased the interest rate of the Borrower, whereby, creating a windfall for ONEWEST over the life of the loan. This was purported to PLAINTIFF by explaining that the Yield Spread Premium was a "credit for closing costs".

55.     PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS failed to provide PLAINTIFF with written notice of the furnishing of negative credit information to consumer reporting agency after DEFENDANTS furnished such negative credit information about PLAINTIFF.

56.     PLAINTIFF is informed and believes and therefore alleges that a California Insurance Disclosure as mandated by law was not provided to the PLAINTIFF prior to the consummation of this loan.

57.     PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS breached their fiduciary duty to PLAINTIFF because they knew or should have known that the PLAINTIFF will or had a strong likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).

58.     PLAINTIFF is informed and believes and therefore alleges that it was in the best interest of the DEFENDANTS to promote the particular program for which they approved the PLAINTIFF. It led to a maximization of profits for the DEFENDANTS, with no concern for the PLAINTIFF financial position or livelihood.

59.    PLAINTIFF is informed and believes and therefore alleges that as a result of the practices of DEFENDANTS, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

60.    PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

61.    PLAINTIFF has been attempting to engage in a Loan Modification program with DEFENDANTS ONEWEST and/or QUALITY. PLAINTIFF performed all necessary requirements that DEFENDANTS ONEWEST and/or QUALITY requested in order for a Loan Modification to be processed. Unfortunately DEFENDANTS have failed to provide any meaningful Loan Modification offer that PLAINTIFF can afford.

62.    PLAINTIFF alleges that they were a victim of Fraudulent Target Marketing by DEFENDANTS. Predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers. They market their products to customers they identify as financially unsophisticated or vulnerable, and therefore most likely to accept highly unfavorable loan terms. In particular, predatory lenders look for people with limited education who are not adept in financial matters and lack the financial sophistication to scrutinize loans such as the PLAINTIFF. Such lenders, as these DEFENDANTS are, often prey on households that have limited incomes but significant equity in their homes. The elderly and minorities are a primary target for predatory lenders. Marketing techniques include placing "cold calls" to potential borrowers, direct mailings, telephone and door-to-door solicitation, and television commercials. The same methods used by these DEFENDANTS against this PLAINTIFF.

63.    Predatory lenders, these DEFENDANTS, used target marketing not to meet the needs of their customers, but rather to identify households most vulnerable to the lenders' aggressive or fraudulent behavior. Predatory lenders' advertisements claim that easy and affordable home equity loans are a quick way for consumers to pay down credit card debt, take a desired vacation, or pay off other expenses, and still have lower monthly mortgage payments. Predatory lending also often involves fraudulent home improvement scams targeted to elderly homeowners because they are more likely than younger people to live in older homes that need repair, are less likely to undertake the repairs themselves, and may not have the cash to pay for someone else to perform them. Because these homeowners have built up substantial equity in their homes, they are particularly at risk of losing a major share, if not all, of their equity. Predatory lenders also make loans to homeowners who are mentally incapacitated and do not understand the nature of the mortgage transaction or papers to be signed. PLAINTIFF alleges that the DEFENDANTS engaged in this very behavior and were the cause of PLAINTIFF'S current economic misfortune.

64.    PLAINTIFF alleges that they were a victim of Abusive Loan Terms. The second characteristic of a predatory loan is the set of abusive terms it contains. Predatory loan terms are structured to extract the greatest possible return to the lender. For equity stripping purposes, they are also routinely designed to preclude a borrower's ability to repay the loan. The loan itself may be unnecessarily large, even in excess of a 100 percent loan-to-value ratio. As long as the amount of the loan exceeds the fair market value of the home, it is difficult for the owner to refinance the mortgage or to sell the house to pay off the loan. Negative amortization loans are structured so that interest is not amortized over the life of the loan and the monthly payment is insufficient to pay off the accrued interest. The principal balance therefore increases each month and, at the end of the loan term, the

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page **18** of 74

borrower may owe more than the originally borrowed amount. PLAINTIFF alleges that the DEFENDANTS placed PLAINTIFF in a loan with the abusive loan terms as stated above.

65.    Aside from the loan itself—typically offered at very high interest rates—loan terms often include inflated and padded costs, such as excessive closing or appraisal charges, high origination and other administrative fees, and exorbitant prepayment penalties that trap lower-income borrowers into the subprime market. While prepayment fees are rarely charged in the prime market—some 2 percent of mortgages carry them—they are included in 80 percent of subprime mortgages, according to the Detroit Alliance for Fair Banking. And, unlike in the prime market, where prepayment fees are a tradeoff for lower interest rates, subprime mortgage holders rarely, if ever, get anything for the added fees, which can cost as much as a 6 percent penalty for early payoff. Consumers are locked into the subprime market even if they demonstrate improving creditworthiness, and are doubly hurt because they are not free to take advantage of lower interest rates as can prime market customers, which is exactly what happened to PLAINTIFF as he was stuck into a high interest, Sub-Prime Loan by DEFENDANTS, with high costs and fees.

66.    There may also be insertion of pre-dispute, mandatory, binding arbitration clauses in contractual documents. Such clauses are not necessarily offensive by themselves. When combined with other predatory loan provisions, however, they can greatly inhibit a borrower from receiving relief from highly unfavorable and unreasonable loan terms and conditions. Other typical predatory loan features include balloon payments that effectively force borrowers to refinance their loans at even higher rates later. Predatory loan terms also commonly feature single-premium credit life insurance that the lender requires as an up-front, lump-sum payment that the borrower must finance. Thus the borrower ends up paying additional interest—on top of the cost of overpriced and often

unnecessary insurance. Maintenance provisions may increase the interest rate of a loan as a result of a 30- or 60-day late payment. This can be clearly seen in PLAINTIFF'S note and deed of trust.

67.     PLAINTIFF alleges that they were a victim of Fraudulent Lender Behavior. Fraudulent behavior is the third identifying characteristic of a predatory loan. It refers to illegal management by the lender of the loan transaction to extract the maximum value for the lender. Fraudulent behavior might include: 1) failing to explain the terms of the loan or providing obscure information, 2) using high-pressure tactics to force a prospective borrower to continue through the loan application process in cases in which the customer would prefer to discontinue the process, 3) omitting explanations of credit life insurance or balloon payments, and 4) discouraging borrowers from exploring lower-cost options. These are exactly the kind of behavior that shown at the consummation of PLAINTIFF'S loan by DEFENDANTS.

68.     One common tactic is to offer a short-term loan and quote a seemingly reasonable rate, without explaining that the "reasonable" rate becomes astronomical when translated into the annual percentage rate. "Flipping," or repeated refinancing, is another powerful tool of a predatory lender. The lender might offer to refinance a loan on the justification that the borrower can obtain a lower interest rate. But upon signing the new loan documents, the borrower finds out either that the interest rate is not lower or higher processing fees more than overwhelm any offset in interest rates. Or, a balloon payment provision in the original loan might make refinancing unavoidable. Such as the terms in the Notes and Deeds of Trust that DEFENDANTS made PLAINTIFF sign.

69.     Initiating loans without considering the borrower's ability to repay or structuring loans with payments that a borrower cannot afford can effectively strip the equity from a homeowner. And encouraging borrowers to consolidate consumer debts into a home equity loan with a higher interest rate than the underlying consumer credit debt—thereby also increasing the size of

the loan—is a standard predatory lending practice. Further, predatory lenders may refuse to provide modest home equity loans and, instead, use high-pressure tactics to persuade borrowers to fully refinance their homes—again, usually at interest rates that exceed the underlying mortgage. Other fraudulent behavior includes adding cosigners whom the lender knows have no intention of contributing to the payments, forging loan documents, and using abusive and high-pressure collection practices, such as harassing phone calls, letters, and threats. The combination of abusive loan terms and aggressive and fraudulent lender behavior that characterizes predatory lending illustrates how a loan can financially destroy an individual even in instances in which the loan's interest rate may not be alarmingly high. Because of the many tools in the arsenal of a predatory lender, a request for a relatively modest loan can be transformed into a major financial crisis for an unsuspecting borrower, or in this case, the PLAINTIFF.

70.    Predatory lending is a subset of subprime lending. The difference between the two is important. By definition, subprime lending is the provision of loans to households that have demonstrated an inability or unwillingness to properly manage credit. By definition, the subprime market is the credit source of last resort for households with poor credit histories, insufficient documentation of requisite financial resources or other important loan application information, and other loan application shortcomings that would limit a prospective borrower's ability to secure credit from the prime market. Subprime loans, such as these DEFENDANTS, carry higher interest rates than prime loans with the justification that borrowers with higher risk factors should pay more to offset their perceived greater risk to the financial institution advancing the loan. Subprime loan rates are also higher, according to Ken Temkin (2000) of the Urban Institute, because underwriting guidelines in the subprime market are not standardized across the industry. The lack of standardization causes variation in interest rates offered by different lenders and makes it difficult for

borrowers to "shop" for the most favorable rates as was the case here with PLAINTIFF. PLAINTIFF by virtue of his race, was taken advantage of by DEFENDANTS. Despite this clear conceptual distinction between predatory lending and legitimate subprime lending, the reality of subprime and predatory lending is much murkier. A loan does not have to be loaded with an excessive number of egregious provisions for it to unfairly undermine the financial solvency of a family.

71.    For example, steering minority households to the subprime market on the basis of race/ethnicity, rather than because of a demonstrated inability to properly manage credit, may be a violation of the Fair Housing Act and Equal Credit Opportunity Act— although it is not necessarily an act of "predatory lending." In fact, even one percentage point unjustifiably added to a mortgage can add substantially to a household's financial burden and greatly undermine its asset-building capabilities. Over the 30-year life of an $81,000 home mortgage, one additional percentage point could add nearly $21,000 to the cost for the home buyer—not including the additional higher processing fees subprime loans typically carry. Note that the typical subprime loan is 300 to 400 basis points higher than a comparable prime market loan. PLAINTIFF was stuck in a very bad financial predicament by DEFENDANTS, just because his race indicated that they may be an "easy target".

72.    Just as fringe-lending activity is increasing, the subprime market has experienced exponential growth in lower-income minority communities. A recent study published by the U.S. Department of Housing and Urban Development (HUD) based on 1998 Home Mortgage Disclosure Act (HMDA) data uncovered striking racial disparities in the subprime market. The report finds that subprime loans are three times more likely in low-income neighborhoods than in high-income areas, and five times more likely in black neighborhoods than in white neighborhoods. In predominantly black communities, high-cost subprime lending accounted for 51 percent of home loans in 1998,

compared with only 9 percent in predominantly white areas. HUD further notes that homeowners in high-income black neighborhoods are six times as likely as homeowners in upper-income white neighborhoods, and twice as likely as homeowners in low-income white neighborhoods, to have subprime loans. Thirty-nine percent of homeowners in upper-income black neighborhoods had subprime loans, compared with 6 percent of homeowners in upper-income white neighborhoods and 18 percent for homeowners living in low-income white neighborhoods.

73. PLAINTIFF, being a minority, was the prime example of this type of discrimination. As noted above, the rationale for disproportionately high levels of subprime lending to lower income and minority households is that those borrowers represent substantially greater risk than borrowers in the prime mortgage market. Unfortunately, there is little available public data on the credit quality of households that would allow for an examination of the reasonableness of the growth of subprime lending to lower-income minority households. Data that are available, however, do not support the recent explosive growth of this segment of the mortgage market.

74. First, several financial institutions in the past decade have confirmed that lower-income status is not synonymous with higher credit risk. Stated otherwise, lower-income consumers who receive mainstream credit perform roughly the same as middle- and upper-income households receiving similar credit. As a result, the much greater level of subprime lending to lower-income households relative to higher-income households is not immediately justified by available information on credit quality of these two groups. Second, although black households have been shown in studies to have greater credit problems than non-Hispanic white households, the level of subprime lending to black households and communities far exceeds the measured level of credit problems experienced by those households. According to a 1999 Freddie Mac study, black households have roughly twice the credit problems of non-Hispanic white households. Yet HUD's

data show that blacks rely on subprime refinance lending roughly four times as much for their mortgage credit. Credit quality alone therefore does not fully explain the extreme reliance of black households on the subprime market.

75.     Further research by Freddie Mac reports that as much as 35 percent of borrowers in the subprime market could qualify for prime market loans. Fannie Mae estimates that number closer to 50 percent. PLAINTIFF alleges that he would have qualified for a Prime-Market loan, however was not given that option by DEFENDANTS based on his skin color. If these estimates are accurate, it represents potentially hundreds of millions of dollars wasted each year by the very households that can least afford it.

76.     Although creditworthiness is the measure by which financial institutions determine the type of loan most appropriate for a particular borrower, there is substantial confusion between creditworthiness and credit history. Creditworthiness or credit risk is the measurement of the borrower's ability and willingness to repay a loan. Credit history is the financial transactions data on which a borrower's creditworthiness is determined. Stated otherwise, creditworthiness is the interpretation of an individual's credit history. An evaluation about creditworthiness of a borrower requires, among other things, judgments about the reliability and comparability of the underlying financial transactions data. There are a number of reasons why an individual's credit history may not accurately reflect his or her actual creditworthiness. Confusion about credit history and creditworthiness inappropriately reinforces the idea that lower-income, and particularly minority, communities are largely bad credit risk environments. Several problems arise from interpreting creditworthiness from existing credit history data for minority households and comparing the data with that for non-Hispanic white households. First, low-income minorities are more likely to be financially unsophisticated, and thus may not attempt to correct poor credit histories before applying

for a loan. Two borrowers may have similar credit behavior, but if one has taken steps to improve his or her credit records before applying for a loan, that borrower will be deemed more creditworthy. In fact, many households may be completely unaware of the need to maintain a good credit history, and the role that documentation plays in determining their access to credit.

77.    A related issue is coaching of borrowers at the time of application for loans. Proper counseling at the time of loan application may enable a household to improve its credit score, but there may be substantial differences in the ways in which households receive such coaching along racial and ethnic lines. Third, comparing credit histories of households that have access to and use mainstream financial institutions with individuals that rely primarily on fringe banking services could result in biased assessments of creditworthiness across racial and ethnic groups. Federal mortgage data, as well as the behavior of fringe and predatory lenders, suggest that minority households are more likely to have used finance companies and other fringe financial services whose terms and practices are more costly and harsh. In some cases, consumers may even have used predatory lending institutions that intentionally structure loans for default. In some instances, loan terms may be so oppressive and unreasonable that repayment is simply unrealistic. Or, some households may have used fringe lenders who might aggressively report even modest credit blemishes in an effort to hold onto their customers by ensuring they remain unattractive to mainstream lending institutions.

78.    Finally, some households may default intentionally because they recognize, albeit after the fact, that the loan terms they have accepted are egregious and unfair if not outright fraudulent. In these instances, financially vulnerable households are penalized with additional credit blemishes for recognizing and acting to defend themselves from unscrupulous or fraudulent lenders. Unfortunately for underserved households, data that might provide more accurate assessments of

borrower creditworthiness are not readily available and therefore not generally used in sophisticated models of credit risk. The result is continued disparate evaluations of credit risk for lower-income, and particularly minority, households and consequently, lower homeownership rates than might be possible.

79.    Predatory lending is an outlying consequence of the inefficient financial markets that exist in many lower-income and minority communities. Predatory lending practices thrive in an environment where competition for financial services is limited or lacking, and where excessive marketing of subprime loans and fringe financial services are occurring. For this reason, effectively limiting predatory lending requires the same three-pronged approach recommended to reduce excessive fringe financial services in lower-income, minority, and distressed communities: 1) enhanced enforcement of the relevant federal and state lending and consumer protection laws, 2) increased prime market lending, and 3) improved borrower education and awareness of financial services options and opportunities (see Carr and Schuetz 2001).

80.    Laws that specifically relate to predatory lending and whose greater enforcement must play a key role in eliminating predatory lending include the Fair Housing and Equal Credit Opportunities Acts, the Real Estate Settlement Procedures Act, and the Homeowner's Equity Protection Act. Some predatory lending practices also might violate various federal and state consumer protection laws, such as the Truth in Lending Act. Together, these laws provide a formidable regulatory infrastructure to make important strides in removing predatory lenders from the nation's most vulnerable and distressed communities. Together, these laws cover practically every conceivable predatory lending arrangement, and PLAINTIFF alleges that this complaint be allowed to proceed forward through litigation, and that the DEFENDANTS be punished for committing these acts as stated above.

81.     PLAINTIFF is informed and believes and therefore alleges that DEFENDANTS engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

## FIRST CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

82.     PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.     On or about November 29, 2006, PLAINTIFF is alleged to have executed certain loan documents, among which was a certain Promissory Note document, in conjunction with a loan in the approximate principal sum of $519,200.00, where at the time of their purported execution of said Promissory Note they were not provided a copy thereof, nor was one provided to them thereafter.

84.     On or about November 29, 2006, PLAINTIFF is alleged to have executed certain loan documents, among which was a certain Deed of Trust in conjunction with a loan in the principal sum of $519,200.00, utilized for the Subject Property, a copy of which was not provided to them at the time of their purported execution thereof.

85.     PLAINTIFF was requested to execute multiple documents at the time and place where the above referenced Promissory Note and Deed of Trust documents were allegedly signed by PLAINTIFF.  PLAINTIFF was confused and puzzled by the lack of explanations and no one explained the ramifications for the documents, but only asked for signatures.

86.     The above referenced Promissory Note and Deed of Trust is therefore voidable and

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page 27 of 74

1 | subject to statutory damages.

2 |   87.    Neither prior to, nor after the Promissory Note and Deed of Trust documents were

3 |
4 | purportedly signed by PLAINTIFF, were PLAINTIFF informed or advised by any agent, employee or

5 | representative of the originating lender, what the true interest rate, loan repayment terms, costs and

6 | fees for the loan were.

7 |   88.    At no time during the loan transaction process was it ever disclosed to

8 | PLAINTIFF by any agent, employee or representative of the originating lender, that the loan

9 |
10 | contained a yield spread premium (YSP) provision, the cost of which was to be paid by PLAINTIFF

11 | as added interest, points and fees in connection with their residential mortgage loan, nor were these

12 | additional costs ever disclosed to PLAINTIFF in the loan disclosure documentation as required by

13 | law, nor in the loan escrow documentation or escrow closing statements.

14 |   89.    Other crucial terms regarding the loan documentation were also never fully

15 | explained to PLAINTIFF, if at all, as required by statute, including the exact interest rate set forth in

16 | the Promissory Note, how and when any adjustments to that interest rate and recurring monthly

17 |
18 | payment would occur, what index or basis would be used for calculating any such interest rate

19 | adjustments, nor what the effect of any negative amortization would be.

20 |   90.    It was not disclosed or explained to PLAINTIFF by any agent, employee or

21 | representative of the original lender, what the negative effect to PLAINTIFF'S home equity would be

22 |
23 | in the event that the scheduled or option ARM monthly payments were not sufficient to pay all

24 | accruing interest, resulting in an ever increasing balance owing on the loan and the eventual total

25 | dissipation of PLAINTIFF'S home equity.

26 |   91.    The cumulative effect of the Deed of Trust containing small and hidden and/or

27 | disguised provisions which <u>were not explained and do not show acknowledgement of understanding</u>

28 |

and acceptance from PLAINTIFF.  As a result said Deed of Trust operates as a <u>Cognovit Note</u> to the sole detriment and subsequent depravation of PLAINTIFF and PLAINTIFF'S rightful possession of property.

92.     PLAINTIFF was unknowingly misled and rushed into signing loan documents with cognovit clauses to PLAINTIFF'S grave detriment, and is subject to suffer further irreparable harm if PLAINTIFF is dispossessed of the Subject Property. DEFENDANTS violate PLAINTIFF'S rights to the subject property under Due Process of law resulting in PLAINTIFF being deprived of their Fifth and Fourteenth Amendment Rights to property.  PLAINTIFF did not make a voluntary, knowing and intelligent waiver of the cognovits clauses in the Deed of Trust.  These overwhelming and compelling grounds warrant a jury trial.

93.     DEFENDANTS failure to provide adequate time to reveal and explain clauses hidden within the Deed of Trust affecting PLAINTIFF'S control and ownership of their property or directing PLAINTIFF to such clauses, or by clearly writing their meaning in the form of a warning to ensure the PLAINTIFF was thoroughly aware that they were forfeiting their control and ownership of said property which <u>resulted in depriving an otherwise unknowing PLAINTIFF of their fundamental rights to Due Process by unconscionable means and redress by appeal.</u>

94.     The Deed of Trust, proceeding as a cognovit note, wholly evades the requisite form and manner of noticing as encumbering cognovits or confessions as mandated by the Supreme Law of the Land.

95.     Such a judgment (of confession) may be taken by any person or any company holding the note, only if specifically and diligently pointed out and discussed as to the legal ramifications in so doing, for it cuts off every defense which the maker of the note might otherwise possess.

96.     There is no credible evidence and/or proof that PLAINTIFF ever knowingly waived

1  or was ever advised of their legal detriment upon the signing of the transaction documents with the

2  hidden cognovit clauses.

3
        97.    PLAINTIFF received no substantial benefit and/or any other consideration for the
4
5  cognovits note including and not limited to a reduction in installment payments or reduction in

6  interest rates.  The loan documents on the Subject Property are illegal and/or void since there was

7  neither clear and unambiguous warning nor extra consideration for the waiving of PLAINTIFF'S

8  rights.

9
        98.    PLAINTIFF is informed and believes, and based thereon, alleges that the original
10
11  lender or its successors in interest by agency, assignment, nomination or appointment, whosoever

12  was the alleged current beneficiary or its servicing agent, have engaged in deceptive loan practices

13  with respect to PLAINTIFF, in knowing violation of the Home Ownership and Equity Protection Act

14  ("HOEPA"), 15 U.S.C., Section 1637, and the Truth in Lending Action("TILA"), 15 U.S.C. Section

15  1601-1667f, and Federal Reserve, Regulation-Z, 12 CFR 226.23(a)(3), and the Federal Trade

16
17  Commission Act ("FTC"), 15 U.S.C. Sections 41-58. The full details of these violations are presently

18  unknown to PLAINTIFF, however, when these facts are ascertained though discovery and

19  investigation, this complaint will be amended with leave of court to alleges those facts.

20  DEFENDANTS have an obligation to take "GOOD AND VALID" care of the purported loan

21  "DOCUMENTS."

22
        99.    To date, PLAINTIFF has seen no evidence that DEFENDANTS have fulfilled
23
24  DEFENDANTS' contractual obligation, and common law and statutory duty. PLAINTIFF demands

25  DEFENDANTS present for "INSPECTION" the aforementioned documents, to be presented by

26  DEFENDANTS to this Court and PLAINTIFF, to be personally INSPECTED and verified by the

27  facilitator of this matter and PLAINTIFF, so as to evidence DEFENDANTS have met

28

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page 30 of 74

DEFENDANTS' contractual obligation, and common law and statutory duty to take "GOOD AND VALID" care of the purported loan documents.

(see: Black's Law Dictionary Sixth Edition, page 692)

**Good and Valid.** Reliable, sufficient, and unimpeachable in law; adequate; responsible.)

100. Requisite documents sought in this transaction as defined for this matter include:

1.) The GENUINE ORIGINAL, PROMISSORY NOTE signed by any and all parties in this matter; and

2.) The GENUINE ORIGINAL ALLONGE(s), as such are required by law to be firmly affixed to the other documents requested; and

3.) The GENUINE ORIGINAL MORTGAGE and/or DEED OF TRUST as specific to this matter; and

4.) The GENUINE ORIGINAL FEDERAL RESERVE form S3 registration statement, inclusive of the correct OMB number, as required by PRIVACY ACT TITLE 5 ;552(a); and

5.) The GENUINE ORIGINAL FEDERAL RESERVE form 424(b)(5) prospectus, inclusive of the correct OMB number, as required by PRIVACY ACT TITLE 5 ;552(a); and

6.) The GENUINE ORIGINAL FEDERAL RESERVE form FR 2046 balance sheets, inclusive of the correct OMB number, as required by PRIVACY ACT TITLE 5 ;552(a); and

7.) The GENUINE ORIGINAL FEDERAL RESERVE form FR 2049 balance sheets, inclusive of the correct OMB number, as required by PRIVACY ACT TITLE 5

;552(a); and

8.)   The GENUINE ORIGINAL FEDERAL RESERVE form FR 2099s balance sheets, inclusive of the correct OMB number, as required by PRIVACY ACT TITLE 5 ;552(a); and

9.)   Any and all documents evidencing public recording and documents by DEFENDANTS pursuant to and in accordance with State Law requirements of recording transfers of title and/or deeds and/or proof of ownership of real property.

101.   DEFENDANTS denied PLAINTIFF'S request to verify and DEFENDANTS have not fulfilled their contractual obligations and common law and statutory duty to maintain said foregoing requisite documents in a manner that said documents are in GOOD and VALID condition and available for inspection.

102.   PLAINTIFF has the contractual rights and common law and statutory rights to inspect and verify that the said requisite documents are in GOOD and VALID condition.

103.   DEFENDANTS have the contractual obligation and common law and statutory duty to keep safe all requisite documents and maintain said documents in a manner that all requisite documents are in GOOD and VALID condition at all times.

104.   On information and belief, PLAINTIFF alleges that DEFENDANTS have altered, destroyed, and/or mutilated the GENUINE ORIGINAL said requisite documents as specific to this matter, and ONLY have OLD COPIES and NO CERTIFIED COPIES evidencing their current condition of each of them, including the GENUINE ORIGINAL, promissory note; the GENUINE ORIGINAL ALLONGE(s), the GENUINE ORIGINAL MORTGAGE and/ DEED OF TRUST, the GENUINE ORIGINAL FEDERAL RESERVE form S3 registration statement, *inclusive of the correct OMB number,* the GENUINE ORIGINAL FEDERAL RESERVE form FR 2026 balance

sheets, *inclusive of the correct OMB number,* and the GENIUNE ORIGINAL FEDERAL RESERVE form 2049 balance sheets, *inclusive of the correct OMB number,* and the GENUINE ORIGINAL FEDERAL RESERVE form FR 2099s balance sheets, *inclusive of the correct OMB number.*

105.    PLAINTIFF requests all DEFENDANTS claiming ownership rights to show proof of ownership to present:

1.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTION' the GENUINE ORIGINAL, PROMISSORY NOTE; and

2.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTIONS' the GENUINE ORIGINAL ALLONGE(s); and

3.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTION' the GENUINE ORIGINAL MORTGAGE and/or DEED OF TRUST; and

4.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTION' the GENUINE ORIGINAL form S3 registration statement; and

5.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTION' the GENUINE ORIGINAL form 424(b)(5) prospectus; and

6.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTION' the GENUINE ORIGINAL form FR 2046 balance sheets; and

7.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTIONS' the GENUINE ORIGINAL form FR 2049 balance sheets; and

8.)    DEFENDANTS present to this Court and PLAINTIFF, for their 'INSPECTIONS' the GENUINE ORIGINAL form FR 2099s balance sheets; and

9.)    DEFENDANTS reimburse California the 'public' recording fees due California, California taxpayers, the body politic, the citizens of California, the government of

California, et al; including without limitations and any and all late fees and/or interest due California, California taxpayers, California political body, California citizens, California government, et al.

106.   Judicial Notice.  DEFENDANTS are barred by the rules of evidence and other laws from presenting any and all copies, "certified" or not in place of the GENUINE ORIGINAL DOCUMENTS, as such are not prima facie evidence and/or "best evidence" of the "current condition" of the "said documents."

107.   An actual controversy has arisen and now exists between PLAINTIFF and DEFENDANTS, regarding their respective rights, duties and obligations under the above referenced Promissory Note, Deed of Trust, and related loan documentation and this controversy can only be resolved by the intervention of this Court.  PLAINTIFF contends that DEFENDANTS did not have the right to foreclose on the Subject Property because DEFENDANTS' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, the Truth In Lending Act, RESPA, Predatory Lending Practices, California Business and Professions Code and Unfair and Deceptive Lending Practices.  Thus the purported power of sale by DEFENDANTS no longer applies.  PLAINTIFF further contends that DEFENDANTS do not have the right to foreclose on the Subject Property because DEFENDANTS did not properly perfect their interest in the Note pursuant to law and did not properly comply with proper delivery procedures under RESPA, they consequentially do not possess the purported power of foreclosure, and the subsequent foreclosure that occurred was illegal. PLAINTIFF further contends that the DEFENDANTS perpetrated a fraudulent loan transaction.

108.   PLAINTIFF alleges that DEFENDANTS and each of them are prohibited by law from attempting to enforce any provisions of the above referenced documents, including the

non-judicial foreclosure and PLAINTIFF'S real property, until this controversy has been fully adjudicated and resolved by the Court, whereas DEFENDANTS contend that they are nevertheless immediately entitled to fully enforce those provisions.

109.    DEFENDANTS claim that it is the current beneficial owner of the Deed of Trust and holder of the Note and the obligations secured thereby, it states it has a material interest in the Property and in the action.  Since DEFENDANTS have this involvement, it has the responsibility for matters pertaining to the possession of the security instruments.

110.    PLAINTIFF requests that this Court find the purported power of sale contained in the loan of no force and effect at this time, because DEFENDANTS actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused PLAINTIFF to be at an equitable disadvantage to DEFENDANTS.  PLAINTIFF further requests that title to the Subject Property remain in PLAINTIFF'S name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation.

111.    DEFENDANTS' actions, individually and collectively create a facially apparent conflict as to who actually hold and/or held the note at all material times.

112.    DEFENDANTS misrepresent that they have the right to collect monies from PLAINTIFF on their behalf or on behalf of others when DEFENDANTS have no legal right to collect such monies. The times, places and identities of all the agents of the parties to the misrepresentations are expected to be fully revealed in discovery and investigation of the person who made the misrepresentation statements on behalf of the lenders and who prepared the defective documents.

113.    **There Is No Authorization For A Foreclosure.** The Deed of Trust is

evidenced by possession of the promissory note to show the party who is entitled to enforce the security interest and has the right to institute a non-judicial foreclosure proceeding under the Deed of Trust. There is no evidence that there had been a transfer of beneficial interest in the Note and Deed of Trust.

> "The note and the mortgage are inseparable; the formal as essential, the later as an incident. An assignment of the latter alone is a nullity." <u>Carpenter v. Longan</u>, 83 U.S. 217, 274, (1872); accordingly <u>Henley v. Hotaling</u>, 41 Cal. Civ. Code 2936. Therefore if one party receives the note and another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. <u>Adler v. Sargent</u>, 109 Cal.42,49-50 (1895)."

114.    The Court must determine the constitutional questions raised herein as a matter of law and allow a jury to determine due process violations questions of fact.

115.    As a result of the DEFENDANTS' actions, PLAINTIFF has suffered damages according to proof, and seeks declaratory relief that DEFENDANTS' purported power of sale is void and has no force or effect against the Subject Property.

116.    Further, DEFENDANTS' actions have been willful, knowing and malicious entitling PLAINTIFF to punitive damages in an amount appropriate to punish DEFENDANTS and to deter others from engaging in the same behavior.

WHEREFORE, PLAINTIFF prays for relief as set forth below.


## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

117. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118. DEFENDANTS have completed a foreclosure action under the Note by way of a non-judicial sale. Said sale has caused PLAINTIFF great and irreparable injury in that real property is unique.

119. The continued wrongful conduct of DEFENDANTS, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to PLAINTIFF. PLAINTIFF does not have the beneficial use and enjoyment of the property and will lose her home permanently if any further transfer, sale or assignment of the Subject Property is not prevented.

120. PLAINTIFF has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to PLAINTIFF. PLAINTIFF has suffered and will continue to suffer in the future unless DEFENDANTS' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for PLAINTIFF to determine the precise amount of damage PLAINTIFF will suffer.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### Determine Nature, Extend and Validity of Lien under

### California Commercial Code §9313

### (Against All Defendants)

121. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

---

PLAINTIFF'S COMPLAINT FOR DAMAGES               Page 37 of 74

122.   A written instrument that purports to be a Deed of Trust executed by PLAINTIFF is presently in existence and under DEFENDANTS' control. The Deed of Trust is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.

123.   Prior to the commencement of this case, the Deed of Trust was transferred from ONEWEST. PLAINTIFF alleges on information and belief that no trustee was a holder in due course, and did not deliver to ONEWEST or any successor trustee the original promissory note, nor did DEFENDANTS ever take actual possession of the original promissory note.

124.   DEFENDANTS failed to comply with California Commercial Code §9313.  As a result, DEFENDANTS never perfected their interest in the above referenced deed of trust.

125.   Said unperfected security interest of DEFENDANT is void as to PLAINTIFF by virtue of 11 U.S.C. §544.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

126.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

127.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its

1  purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated

2  when they entered into the agreement.

3       128.    The terms of the loan imposed upon DEFENDANTS a duty of good faith and fair

4
5  dealing in this matter.

6       129.    DEFENDANTS enjoyed substantial discretionary power affecting the rights of

7  PLAINTIFF during the events alleged in this Complaint.  DEFENDANTS were required to exercise

8  such power in good faith.

9
10      130.    DEFENDANTS willfully breached their implied covenant of good faith and fair

11 dealing with PLAINTIFF when DEFENDANTS:

12           I.  Willfully withheld numerous disclosures;

13          II.  Willfully withheld notices in regard to Underwriting standards, the use of

14
15               English as the only language within the written instruments of the loan while

16               PLAINTIFF'S native language is Spanish, Disclosures of additional income

17               due to interest rate increases, and failure to disclose when negative credit

18               scores were disseminated;

19         III.  Willfully placed PLAINTIFF in a loan that she did not qualify for, could not

20               afford, and subjected them to further financial detriment, while providing

21               DEFENDANTS with financial benefits they would not have otherwise

22               enjoyed.

23
24          IV.  Requiring a minimal down payment, subjecting 95% of the loan to

25               amortization and a detrimental if not dire financial situation for PLAINTIFF.

26      131.    As a result of DEFENDANTS' breach of this covenant, PLAINTIFF has suffered

27
28

1   injury and has caused PLAINTIFF the threat of loss of her home. PLAINTIFF has incurred and

2   continues to incur legal fees, including attorney fees and costs, as well as expenses to right this

3   wrong.

4

5   132. DEFENDANTS' actions in this matter have been willful, knowing, malicious,

6   fraudulent and oppressive, entitling PLAINTIFF to punitive damages in an amount appropriate to

7   punish DEFENDANTS and to deter others from engaging in the same behavior.

8   WHEREFORE, PLAINTIFF prays for relief as set forth below.

9

10  **FIFTH CAUSE OF ACTION**

11  **Violation of TILA, 15 U.S.C. § 1601, et.seq.**

12  **(Against All Defendants)**

13

14  133. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as

15  though fully set forth herein.

16  134. DEFENDANTS violated TILA by failing to provide PLAINTIFF with accurate

17  material disclosures required under TILA and not taking into account the intent of the State

18  Legislature in approving this statute which was to fully inform home buyers of the pros and cons of

19  adjustable rate mortgages in a language (both written and spoken) that they can understand and

20

21  comprehend; and advise them to compare similar loan products with other lenders. It also requires

22  the lender to offer other loan products that might be more advantageous for the borrower under the

23  same qualifying matrix. Lingad v. Indymac Federal Bank (2010) (682 F.Supp.2d 1142, 1148) stands

24  for the proposition that "when a PLAINTIFF fails to allege any facts demonstrating that the TILA

25  violations alleged could not have been discovered by due diligence during the one-year statutory

26

27  period, equitable tolling should not be applied and dismissal at the pleading stage is appropriate."

28

Merriam-Webster defines due diligence as "the care that a reasonable person exercises under the circumstances to avoid harm to other persons or their property". Unfortunately, PLAINTIFF was never even given the tools necessary to take the care needed to discover the TILA violations contained in the loan documents.

135.   PLAINTIFF was never given a complete loan document package. Most, if not all pertinent documents were left out especially important disclosures such as but not limited to the Good Faith Estimate, Truth-in-Lending, Servicing Transfer, Adjustable Rate Booklet, Right to Copy of Appraisal, and the Federal Equal Opportunity disclosure. The representative was more concerned with getting PLAINTIFF in and out, so that he can earn his quick commission and move to the next person. Like a mill, one after the other, DEFENDANTS through their representatives, shuffled PLAINTIFF in, had PLAINTIFF sign on the dotted line, and shuffled PLAINTIFF out. Never was PLAINTIFF even given the required documents so that they could conduct their own due diligence to find out what exactly this adjustable rate mortgage was going to turn into.

136.   PLAINTIFF is a layperson, and does not have a good command of the English language (Spanish is his native language, not English). As a low level English speaking, layperson, the standard of care is a low one. All PLAINTIFF could do under these circumstances to satisfy the due diligence requirement of Equitable Tolling is to call the Bank and ask them exactly how their loan functions and adjusts. The representative at ONEWEST painted a very rosy picture for PLAINTIFF, and convinced him that that he was more than able to afford the home that he was applying for. However ONEWEST's representative failed to tell him and really sit down and explain to him that the initial payment structure was only temporary, and that there payments would soon go up dramatically, and the significance of an interest only loan. It is obvious from the state of the Mortgage and Banking crisis that this type of lending was prevalent during the last few years,

especially during the time when PLAINTIFF was given this loan. Millions of people couldn't have been wrong. They all couldn't have failed to conduct their "due diligence". At some point, the banks, including DEFENDANT ONEWEST must have realized that all of these people couldn't have all of a sudden magically been able to afford these homes. There had to have been some concealment of information from these people, including PLAINTIFF, of the truth of what was going to happen with their payments in the near future. The very action TILA was designed to protect against, and the very reasoning used by the 9th Circuit in making the determination that Equitable Tolling applies to the TILA Statute. As low level English speaking, laypeople, there is only so much that PLAINTIFF could have absorbed from the few minutes that the representative from DEFENDANT ONEWEST had him stare at Loan Documents and had him sign at different places. PLAINTIFF could not have known what he was signing, nor was he given copies of anything pertinent for him to take to someone and ask. There was no other means available to PLAINTIFF to figure out what DEFENDANT ONEWEST and its representatives had him sign his name to.

137.   Any and all statute[s] of limitations relating to disclosures and notices required Pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to DEFENDANTS' failure to effectively provide the required disclosures and notices. Pursuant to CFR § 226.23 (3), Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

138.   The Recalculated Truth in Lending found that the Finance Charge was under stated. The failure of ONEWEST to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan. For real estate secured loans entered into after September 30, 1995, the tolerance is

$100.00 for under disclosed finance charge. For rescission purposes, unless a foreclosure is underway, the tolerance is 1/2% of the total credit extended, over or under (1% if a refinance and no new money lent). The finance charge tolerance for DEFENDANTS in foreclosure actions is $35.00. The failure to accurately report a finance charge is a violation under TILA, California Unfair Competition Law, CA Business & Professions Code 17200 and UDAP statutes. This is emblematic of the deceptive tactics undertaken in this loan program.

139. Further, PLAINTIFF has not received numerous TIL initial disclosures, a mandated Mortgage Loan Origination Agreement, California Insurance Disclosure, and Separate Agreements to demonstrate Yield Spread Premiums. PLAINTIFF was the victim of additional finance charges and deceptive manipulation in regard to baiting him into this type of loan program.

140. Therefore, the borrowers have an extended 3-year right to cancel this loan in accordance with § 226.23 (3).

141. An actual controversy now exists between PLAINTIFF, who contend she has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, DEFENDANTS deny that right.

142. As a direct and proximate result of DEFENDANTS' violations PLAINTIFF has incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

143. DEFENDANTS were unjustly enriched at the expense of PLAINTIFF who is therefore entitled to equitable restitution and disgorgement of profits obtained by DEFENDANTS.

144. DEFENDANTS' actions in this matter have been willful, knowing, malicious,

fraudulent and oppressive, entitling PLAINTIFF to punitive damages in an amount appropriate to punish DEFENDANTS and to deter others from engaging in the same behavior.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7 10(c)

### (Against All Defendants)

145.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146.    An applicant for a loan originated pursuant to the provisions of this section must be given, at the time he or she requests an application, a disclosure notice in the following form:

"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE RATE LOAN. PLEASE READ CAREFULLY"...

147.    The intent of the State Legislature in approving this statute was to fully inform home buyers of the pros and cons of adjustable rate mortgages and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

148.    Here, none of the DEFENDANTS provided to the borrower at any time during the processing of this loan.  The result was a lack of informed knowledge of what PLAINTIFF was entering, and a mental state lacking intent.

149.    As a proximate result of DEFENDANTS' actions, PLAINTIFF has suffered damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 1918.5-1921.1920

### (Against All Defendants)

150.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

151.    According to California Civil Code § 1918.5-1921.1920(a) any mortgage instrument that is made pursuant to the provisions of this chapter shall meet the following requirements: Standards for the adjustment of interest rates or monthly payments shall consider factors, which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations.

152.    This loan was based only upon a credit score, stated income (without verification) and a belief that the property would continue to increase in value. No consideration of the ability of PLAINTIFF to repay this loan with a realistic means test has been made.

153.    Additional documentation was available in the form of W-2's, income information, tax records, etc. to determine the ability of the borrower to repay the loan. The failure to do so by DEFENDANTS violates California Civil Code § 1918.5-1921.1920.

154.    Further, the lender must notify borrowers of any changes in the interest rate and monthly payment of a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and violates the above law.

155.    As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page **45** of **74**

## Violation of California Civil Code § 1632

### (Against All Defendants)

156.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

157.   Violation of California Civil Code § 1632 states that: "At the time and place where a contract or agreement described in paragraph (1) or (2) of subdivision (b) is executed, a notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be conspicuously displayed ..."

158.   Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter.

159.   PLAINTIFF'S native language is Spanish. PLAINTIFF does not have strong comprehensive reading English skills. Many provisions and terms within a loan servicing agreement are easily confused and misunderstood, if understood at all.  For example, the Non-Conforming and Non-Conforming Expanded Criteria "Interest Only" Fixed Period Libor Arms document is difficult for the average English speaking individual to comprehend. There is no doubt that for someone with limited or lesser comprehension of the written English language, this document would certainly be unintelligible, yet critically important to the understanding of how the loan works.

160.   As a proximate result of DEFENDANTS' actions, PLAINTIFF has suffered damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

### NINTH CAUSE OF ACTION

### Violation of 12 Federal Code of Regulations § 226.23(a)(3)

**(Against All Defendants)**

161.  PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

162.    Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

163.    Following a recalculation of the final Truth in Lending Disclosure provided by ONEWEST, the recalculation showed that the Finance Charge was under stated.

164.    The failure of the lender to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated by the indicated amounts results in an Extended Right to Rescind the loan.

165.    For real estate secured loans entered into after 9/30/95, the tolerance is $100.00 for under disclosed finance charges. The finance charge tolerance for DEFENDANTS in foreclosure actions is $35.00 for rescission.

166.  As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

## TENTH CAUSE OF ACTION

### Violation of 24 Federal Code of Regulations 3500.10

### (Against All Defendants)

167.  PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page 47 of 74

168.     A failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission.

169.     PLAINTIFF never received a Settlement Statement <u>prior to close of escrow</u> or an offer to receive one prior to escrow. The purpose of receiving the statement is so that the client can review the final statement for errors and misrepresentations not present on the closing estimate. Failure to provide the Final Statement did not provide the PLAINTIFF the opportunity to review the Final Statement and enable the PLAINTIFF to determine the accuracy of the Settlement Statement. The failure to provide them triggers a an Extended Right to Rescind.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

### ELEVENTH CAUSE OF ACTION

**Violation of Fair and Accurate Credit Transaction Act of 2003 § 221(b)**

**(Against All Defendants)**

170.     PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

171.     The credit scoring information that must be provided to the consumer is set forth in Section 212(b) of the FACT Act, which amends Section 609 of the FCRA by adding a new subsection (f).

172.     The purpose of disclosure of credit scores is to provide the client a way to determine if the loan program being offered is consistent with his credit worthiness. Failure to provide this disclosure prevents comparison of loans.

173.     None of the DEFENDANTS ever revealed to PLAINTIFF, any credit scores used in the determination of approval of this loan, in violation of this section.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

## TWELFTH CAUSE OF ACTION

### Rescission

### (Against All Defendants)

174.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

175.    PLAINTIFF is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) Code of Federal Regulations Violations; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

176.    The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends PLAINTIFF'S right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or PLAINTIFF'S right to rescind.  Here, DEFENDANTS have failed to properly disclose the details of the loan.  Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place PLAINTIFF in a loan she could not afford and would ultimately benefit DEFENDANTS following the negative amortization that accrued.

177.    The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

178.    As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for rescission of the stated loan in its entirety.

## THIRTEENTH CAUSE OF ACTION

**Misrepresentation and Fraud**

**(Against All Defendants)**

179.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

180.    DEFENDANTS intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving PLAINTIFF and inducing them to part with their personal and real property buy using a stated income loan.

181. The credit application and or available W-2's for PLAINTIFF was enough, in addition to the application itself for DEFENDANTS to know what type of loan should be offered, and what the PLAINTIFF could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

182. DEFENDANTS engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

183.    PLAINTIFF justifiably relied on DEFENDANTS' deception, which was the actual and proximate cause of PLAINTIFF'S damages.

184.    On or about November 29, 2006, the loan originators falsely and fraudulently represented to PLAINTIFF that they were participating in an equitable agreement. DEFENDANTS knowingly and intentionally concealed material information from PLAINTIFF, which is required by federal Statutes and regulations to be disclosed to the PLAINTIFF both before and at closing.

185.    The representations made by DEFENDANTS were in fact false. The true facts were that the PLAINTIFF was deceived into unknowingly signing a cognovit note, waiving their equitable rights to ownership of their property, without warning and just compensation for waiving

above PLAINTIFF overpaid in interest.

191.   As a proximate result of DEFENDANTS' fraud and deceit in alleging they had the right of foreclosure and the facts herein alleged PLAINTIFF has been damaged in a sum in excess of $519,200.00 plus costs to be determined at trial.  In doing the acts herein alleged, DEFENDANTS acted with oppression, fraud, and malice, and PLAINTIFF is entitled to punitive damages of $1,557,600.00, or as court may deem proper.

192.   PLAINTIFF is entitled to exemplary and punitive damages for DEFENDANTS' fraudulent conduct in the sum to be determined at trial.  Further, fraudulent concealment avoids the contract.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

### FOURTEENTH CAUSE OF ACTION

**Unfair and Deceptive Business Act Practices (UDAP)**

**(Against All Defendants)**

193.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

194.   DEFENDANTS failed to undergo a diligent underwriting process for this loan a alleged in this complaint.  They also failed to properly adjust and disclose facts and circumstances relating to PLAINTIFF'S Adjustable Rate Mortgage and placed PLAINTIFF in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it.  DEFENDANTS did have that knowledge of these facts, circumstances and risks but failed to disclose them.

195.   By reason of DEFENDANTS' fraudulent, deceptive, unfair, and other wrongful

conduct as herein alleged, said DEFENDANTS have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive PLAINTIFF of her home, equity, as well as her past and future investment.

196.   The fraudulent conduct of DEFENDANTS is as follows:

a)      DEFENDANTS engaged in unfair business practices aimed at deceiving PLAINTIFF before and during the loan process;

b)      DEFENDANTS, by and through their officers, employees and agents, failed to disclose that the interest rate actually charged on this loan was higher than the rate represented and promised to PLAINTIFF;

c)      DEFENDANTS by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information;

d)      DEFENDANTS failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

e)      DEFENDANTS failed to properly disclose that values of the property and their concerns of such an overinflated house price. Despite this DEFENDANTS encouraged a "man in the middle of complicated personal ordeal" to buy at an overinflated price.

197.     DEFENDANTS' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when DEFENDANTS knew that only the periodic payments were fixed (for a time), but that interest rates were not, in fact, "fixed."

198.     By the foregoing reasons, PLAINTIFF has suffered and continues to suffer damages in a sum which is as yet unascertained. PLAINTIFF will ask leave of court to amend the complaint when the true nature and extent of said damages have been ascertained, that because

securitization constitutes a violation of US Federal R.I.C.O. Statutes, we can state without

equivocation that the entire securitization process constitutes violations of Federal R.I.C.O. statutes,

because:

(1) There is the requisite criminal or civil 'enterprise' - consisting of the

sponsor/issuer, the trustees and the intermediary bank. These three parties work

closely together to effect the securitization transaction/

(2) There are 'predicate acts' of:

a.      Mail fraud - using the mails for sending out materials among themselves and

to investors.

b.      Wire fraud - using wires to engage in fraud by communicating with investors.

c.      Conversion - where there isn't proper title to collateral.

d.       Deceit - misrepresentation of issues and facts pertaining to the securitization

transaction.

e.      Securities fraud - disclosure issues.

f.      It entails loss of profit opportunity.

g.      It involves the making of false statements and or misleading representations

about the value of the collateral.

h.      It entails stripping the originator/issuer of the ability to pay debt claims or

Judgment claims in bankruptcy court 0 a state of affairs that may apply where

the sponsor is financially distressed and the cash proceeds of the transaction

are significantly less than the value of the collateral.

199.    DEFENDANTS' actions and use of multiple corporate entities, multiple parties,

and concerted and predetermined acts and conduct are specifically designed to defraud PLAINTIFF,

PLAINTIFF'S COMPLAINT FOR DAMAGES                    Page 54 of 74

constituting an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the PLAINTIFF through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan document.

200.    DEFENDANTS are willfully hiding the original promissory note so as to conceal their RICO operation of fractional reserve lending in violation of law, good faith, and fair business dealings.

201.    By reason of the foregoing, and as a direct and proximate result of the actions of the DEFENDANTS, PLAINTIFF has and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

### FIFTEENTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against Defendants)**

202.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

203.    DEFENDANTS owed a fiduciary duty to PLAINTIFF and breached that duty by failing to advise or notify PLAINTIFF when DEFENDANTS' broker knew or should have known that PLAINTIFF will, or has a likelihood of, defaulting on the loan, DEFENDANTS have a fiduciary duty to the borrower to not place them in that loan (in harms way).

204.    Regarding this loan, it was in the best interest of the DEFENDANTS to promote the particular program for which they approved the PLAINTIFF. It led to a maximization of profits for the DEFENDANTS, with no concern for the PLAINTIFF, her expectation or her position. A 30-year fixed would have netted less return for the lender, though better for the PLAINTIFF.

205.   DEFENDANT failed to provide material disclosures regarding the loan and its interest rate to PLAINTIFF while in the capacity of PLAINTIFF'S Lender.

206.   DEFENDANTS failed to fully comply with TILA/FCR regulations and laws designated to protect PLAINTIFF.  The failure to do so placed PLAINTIFF in a serious disadvantage and potential loss of her home.  Such actions are violations of a fiduciary responsibility owed to PLAINTIFF by DEFENDANTS.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## SIXTEENTH CAUSE OF ACTION

### Unconscionability – UCC-2-3202

### (Against All Defendants)

207.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

208.   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

209.   When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

210.   Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the DEFENDANTS were require to follow; coupled with the windfall that the DEFENDANTS reaped financially from their predatory practices

upon PLAINTIFF, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, PLAINTIFF prays for restitution and relief as set forth below.

### SEVENTEENTH CAUSE OF ACTION

**Predatory Lending; California Business and Professions Code §17200**

**(Against All Defendants)**

211.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

212.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.

213.    Acts undertaken by the DEFENDANTS here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

214.    This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

215.    The loan does not does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part, to a mortgage loan officer;

216.    Contains loan terms whereby the borrower can never realistically repay the loan, representative of "Bait and Switch" tactics.

217.   This loan lends and refinances whereby equity is removed from the home through repeated refinances, consolidation of short term debt into long term debt, negative amortization or interest only loans whereby payments are not reducing principle, high fees and interest rates. Eventually, borrower cannot refinance due to lack of equity.  This results in equity stripping.

218.   This loan is based on a loan application that is inappropriate for the borrowers. For instance, the use of a No Income stated on the loan application from an employed individual who has or can obtain pay stubs, W-2 forms and tax returns.

219.   This loan is underwritten without due diligence by the party originating the loan. There has been no realistic means test for determining the ability of the borrowers to repay the loan. Further, there is a lack of documentation of income or assets and/or job verification.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

### EIGHTEENTH CAUSE OF ACTION

#### Trespass

#### (Against All Defendants)

220.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

221.   From the Closing Date to the date of the filing of this Complaint, PLAINTIFF was in possession of the Subject Property.

222.   On or about June 24, 2009, DEFENDANTS attempted to force an illegal non-judicial sale of the Subject property and attempt to claim a right of entry to the Subject Property. PLAINTIFF has not consented or provided authority to such an entry and dispute the

DEFENDANTS right.  Any attempted or past entry has been accomplished against PLAINTIFF'S will.

223.    The effect of conduct that has produced irreparable damage to PLAINTIFF, for example, to prevent PLAINTIFF'S ingress to and egress from the Subject Property resulting in the complete exclusion of the PLAINTIFF from the PLAINTIFF'S home.

224. DEFENDANTS have not undertaken the proper means and procedure to legally foreclose on the Subject Property, and as stated herein, have violated such laws and regulations that the Note upon which they would otherwise attempt to foreclose upon is null and void by operation of law.  Further, DEFENDANTS have not perfected their interest in the Note, enjoining them from foreclosing upon said Note.

225.    PLAINTIFF is informed and believes, and on the basis of that information and belief alleges, that unless restrained by this court, DEFENDANTS will attempt to trespass against PLAINTIFF'S property. Such trespassory conduct by DEFENDANTS will result in irreparable harm to PLAINTIFF, in that it will not only deprive PLAINTIFF of access to the property, but if left unrestrained, may result in the illegal sale of the Subject Property without Judicial authority or ownership rights, thereby posing a threat to PLAINTIFF'S good and marketable title to the property and any equity or investment PLAINTIFF has in the property.

226.    The potential damages that could proximately result from DEFENDANTS' continued trespass would be extremely difficult, if not impossible, to assess accurately.    Further, DEFENDANTS' continuing trespassory conduct, as alleged in this complaint, will require PLAINTIFF to bring a multiplicity of actions to protect PLAINTIFF'S property interests, thereby rendering PLAINTIFF'S remedy at law inadequate.

227.   As a result of DEFENDANT'S attempted continued trespassory conduct, PLAINTIFF has suffered from emotional distress.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

### NINTEENTH CAUSE OF ACTION

#### Conversion

#### (Against All Defendants)

228.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

229.   On or about June 24, 2009, DEFENDANTS attempted to force an illegal non-judicial sale of the Subject property by filing a Notice of Default, attempting to claim a right of entry to the Subject Property.  PLAINTIFF has not consented to such an entry and dispute the DEFENDANTS right.

230.   The personal and real property located within the Subject Property has a value to PLAINTIFF, both compensable and sentimental.

231.   Following the attempted illegal, non-judicial sale of the Subject Property, DEFENDANTS will attempt to subject the Subject Property to unlawful entry by DEFENDANTS and/or others who have rendered the personal and real property of PLAINTIFF valueless. DEFENDANTS conduct will convert PLAINTIFF'S personal and real property by virtue of their unlawful restraint upon locking the PLAINTIFF out of the Subject Property.

### TWENTIETH CAUSE OF ACTION

#### Quiet Title

**(All Defendants Claiming Any Interest In the Subject Property)**

232.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

233.    PLAINTIFF is and has been seized of the Subject Property, herein above described, commonly known as 1144 East 23rd Street, Los Angeles, CA 90011, within five years preceding the filing of this complaint.

234.    PLAINTIFF is at all times herein mentioned the owner and/or entitled to possession of the Subject Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

235.    PLAINTIFF is informed and therefore believes and thereupon alleges that DEFENDANTS, and each of them, claim an interest in the Subject Property adverse to PLAINTIFF. However, as a result of the conduct more fully described in the preceding allegations, the claim of DEFENDANTS is without any right whatsoever, and said DEFENDANTS have no legal or equitable right, claim, or interest in the Property.

236.    Any and all claims whatsoever, of DEFENDANTS and each of them, asserting any right, title, interest or lien in the Subject Property, are adverse to PLAINTIFF. However, the claims of said DEFENDANTS is without any right whatsoever, and is without basis in law or fact, being the product of a defective, deceptive and void transaction, all of which is void and unenforceable. Said DEFENDANTS have no legal or equitable right, claim, or interest, in said property.

237.    DEFENDANTS and/or unknown claimants alleges ownership, and claim an interest in the property adverse to PLAINTIFF herein. However, the claim of said DEFENDANTS is without any right whatsoever, and said DEFENDANTS have no legal or equitable right, claim or

interest in said property.

238. PLAINTIFF therefore seeks a declaration that the title to the Subject Property is vested in PLAINTIFF alone and that the DEFENDANTS herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said DEFENDANTS, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to PLAINTIFF.

239. PLAINTIFF seeks to quiet title as the true and sole owner of the Subject Property known as of 1144 East 23rd Street, Los Angeles, CA 90011.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## TWENTY-FIRST CAUSE OF ACTION

### Violation of RESPA, 1 U.S.C. § 2601 et.seq.

### (Against All Defendants)

240. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as Though fully set forth herein.

241. The loan to PLAINTIFF was a federally-regulated mortgage loan as defined in RESPA.

242. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

243.   Here, DEFENDANTS were paid unearned fees, which were hidden from PLAINTIFF in the form of a Yield Spread Premium which increased the interest rate of the PLAINTIFF, whereby a windfall for DEFENDANTS was created, the extent resulting in DEFENDANTS receiving a windfall of "buy back fees" over the life of the loan.   Further, DEFENDANTS have failed Part 2, the test for reasonableness of fees. The Yield Spread Premium is an Unearned Fee under the law The normal interest rate on an Option ARM mortgage is determined by adding a "Margin" to the "Index" rate and these combined will result in the interest rate that the borrower will pay. To earn a Yield Spread Premium, the broker will increase the amount of the margin that the borrower will pay, which increases the interest rate and the monthly payment. The increase in the monthly payment multiplied over three years will be the Yield Spread Premium. It takes the borrower three years to repay the Yield Spread Premium. Once the three-year repayment period has ended, the margin on the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment.

244.   This was purported to PLAINTIFF by explaining that the Yield Spread Premium was a "credit for closing costs" or other sort of bait and switch tactic.   The Yield Spread Premium significantly affects the borrower's payment and financial situation. DEFENDANTS have enjoyed the benefits of Unjust Enrichment.

245.    No separate fee agreements, regarding Yield Spread Premium that the broker and the lender have enjoyed were ever provided, resulting in the benefits of Unjust Enrichment for DEFENDANTS.

246.    DEFENDANTS violated RESPA because the payments to the mortgage broker and to the lender were misleading and designed to create a windfall.   These actions were deceptive, fraudulent and self serving.

247.    As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damages in an amount  not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

## TWENTY-SECOND CAUSE OF ACTION

### Violation of California Civil Code § 1916.7b(2)

### (Against All Defendants)

248.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as Though fully set forth herein.

249.  Changes in interest and monthly payment shall not occur more often than twice during any annual period and at least six months shall elapse between any two changes. The rate of interest and monthly payments shall not change during the first semiannual period. The amount of any increase in monthly payment shall not exceed 7.5 percent annually.

250.   Option ARM mortgages are tied to indexes that can change monthly. As the index changes, so does the interest rate. Therefore, by the fact that the interest rate can change monthly, the Option ARM Mortgage is in violation of the above statute.

251. Here, the Adjustable Rate Mortgage Note disclosed that the payments adjust monthly and not semiannually as mandated by this subsection and therefore is in violation.

252. As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth below.

### TWENTY-THIRD CAUSE OF ACTION

#### Violation of California Civil Code § 1916.7 B

#### (Against All Defendants)

253.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as Though fully set forth herein.

254.  Violation of California Civil Code § 1916.7 B states that: "the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal. In no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination".

255. The current loan is a negative amortizing loan and subject to the loan to value being greater that the original loan to value. As each minimum payment is made, the balance increases, increasing the loan to value ratio, thus violation thus violating the above-statute.

256. As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

### TWENTY-FOURTH CAUSE OF ACTION

PLAINTIFF'S COMPLAINT FOR DAMAGES          Page 65 of 74

**Violation of California Civil Code § 2079.16**

**(Against All Defendants)**

257.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as Though fully set forth herein.

258.   The integrity and the duty owed to PLAINTIFF regarding the relationship between the broker and the lender has been compromised.  ONEWEST will pay a Yield Spread Premium to themselves as an inducement to bring them business. Lender has "buy back" provisions in the broker agreements whereby for fraud or default, the broker may be required to "buy back" the loan. Due to this fact and the existence of the lender/broker agreements, it is clear that the lender has some significant measure of control over the broker.

259.   In the matter of Wyatt v Union Mortgage, CA State Supreme Court, 1979; and Montoya v. McLeod (1985) 176 Cal.App.3d 57, 64, 221 Cal.Rptr. 353, the court held that a broker was the lenders' agent even though he had no written agency agreement with the lenders and was paid by a third party, because the broker negotiated the lenders' loan and executed a promissory note in their favor.

260.   Factors the Montoya court considered in determining agent status included: (1) the principal's right to control the agent's activities; (2) the agent's right to exercise discretion in dealings with third parties on the principal's behalf; (3) whether the principal pays compensation to the agent; and (4) the principal's intent to retain the agent and the agent's intent to represent the principal. The mortgage broker had failed to disclose his Dual Agency Relationship as required by both CA statutes and RESPA. Additionally, the lender now assumes a secondary liability for the actions of the broker under agency relationships.  Here, the relationship between ONEWEST as the lender and the broker is that of agents to one another and subject to liability.  Further, the lack of disclosure of the status

and financial interest of each of the DEFENDANTS to PLAINTIFF is in violation of the California Civil Code and RESPA.

261. As can be seen, the Yield Spread Premium significantly affects the PLAINTIFF'S payment and financial situation.

262. An increase in interest rate due to the Yield Spread Premium paid to ONEWEST was not in the best interests of the PLAINTIFF.

263. As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damaged in an amount not yet ascertained, to be proven at trial.

264. Absent the presence of a separate fee agreement regarding Yield Spread Premium and that PLAINTIFF agreed to pay such an excessive amount to the broker, and in evaluating the Yield Spread Premium using the HUD 2 part test, ONEWEST clearly enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

### TWENTY-FIFTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7a(8)

### (Against All Defendants)

265. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as Though fully set forth herein.

266. A Borrower is permitted to prepay the loan in whole or in part without a prepayment charge at any time, and no fee or other charge may be required by the lender of the Borrower as a result of any change in the interest rate or the exercise of any option or election extended to the Borrower.



267.    The current loan contains an Adjustable Rate Mortgage.  Within that Adjustable rate Mortgage, a three-year prepayment penalty was indeed incorporates d in to this loan and therefore in violation of the law because the interest adjusts monthly on this loan.  Further, DEFENDANT's prefer the loan not be paid back rapidly as it will decrease their profit margin.  As such, they have incorporates d a pre-payment penalty.

268.    As a proximate result of DEFENDANTS' actions, PLAINTIFF has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as set forth herein.

## TWENTY-SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

269. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

270. DEFENDANTS provided the PLAINTIFF with an agreement to repay a loan that had An adjustable interest rate and called for compensation to DEFENDANTS for the life of the loan, which was worth value to DEFENDANTS.

271.    PLAINTIFF likewise expected in return, fair and truthful dealings, disclosures and practices by DEFENDANTS while providing value to DEFENDANTS.

272.    DEFENDANTS acknowledged, accepted, and benefited from the PLAINTIFF'S agreement to enter into the loan.

273.    A forced sale of the PLAINTIFF'S home, and an allowance for DEFENDANTS to

recoup the extreme profits enjoyed by forcing PLAINTIFF into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the DEFENDANTS enjoy the benefit of the PLAINTIFF'S actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, PLAINTIFF prays for restitution and relief as set forth below.

### TWENTY-SEVENTH CAUSE OF ACTION

### FAILURE TO MODIFY LOAN-CALIFORNIA CIVIL

### CODE SECTIONS: 2923.5 ET SEQ. AND 2923.6

### (Against All Defendants)

274.    PLAINTIFF repeats and re-alleges each and every allegation contained in paragraphs above inclusive and incorporates s same as though set forth at length.

275.    PLAINTIFF was in default of her loan payments and has been attempting to achieve a meaningful and sustainable modification of the terms of her loan agreement with DEFENDANTS. PLAINTIFF provided DEFENDANTS with all necessary and requested documents and information in order to achieve a Loan Modification. DEFENDANTS made no attempts in good faith to provide PLAINTIFF with a meaningful and sustainable Loan Modification and simply strung PLAINTIFF along until DEFENDANTS ultimately sold PLAINTIFF home in foreclosure proceedings.

276.    DEFENDANTS and each of them, have a duty, among others, to assess the PLAINTIFF'S financial situation and explore options for the PLAINTIFF to avoid foreclosure (California Civil Code Section 2923.5 et seq.).

277.    DEFENDANTS and each of them, have a duty, among others, to implement a loan modification or workout plan for PLAINTIFF, in the best interest of their investors and/or loan pool when the loan is in payment default, or payment default is reasonably foreseeable, and anticipated

recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis (California Civil Code Section 2923.6).

278.   DEFENDANTS and each of them, have failed to perform their duties under California Law, and chose to sell PLAINTIFF'S home in a Trustee Sale.

279.   DEFENDANTS and each of them, received much less recovery selling PLAINTIFF'S home in a foreclosure proceeding than had they have provided PLAINTIFF with a meaningful and sustainable Loan Modification as required by California Civil Code Section 2923.6.

280.   As a direct and legal result of said acts by DEFENDANTS and each of them, PLAINTIFF alleges that she has been damaged legally and proximately in amounts according to proof at time of trial.

## TWENTY-EIGHTH CAUSE OF ACTION

### WRONGFUL FORECLOSURE

### CALIFORNIA CIVIL CODE SECTIONS: 2923.5 ET SEQ. and 2924

### (All Defendants Known or Unknown and Claiming Any Interest in the Property)

281.   PLAINTIFF repeats and re-alleges each and every allegation contained in paragraphs above inclusive and incorporates s same as though set forth at length.

282.   On or about June 24, 2009, PLAINTIFF received a Notice of Default executed by DEFENDANT QUALITY. The Notice of Default did not have the requisite declaration attached to it pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.5(c). The violation of the California Civil Code Section 2923.5 has rendered DEFENDANTS' foreclosure proceedings of the property illegal, wrongful, and void.

283.   DEFENDANTS wrongfully attempted to sell PLAINTIFF'S home through foreclosure proceedings. The violation of the California Civil Code Section 2923.5 has rendered

DEFENDANTS' foreclosure proceedings of the property illegal, wrongful, and void.

DEFENDANTS knew or should have known that pursuant to the mandatory provisions of TILA, HOEPA, and Regulation Z, the Notice of Default were rendered null and void for all purposes, by operation of law, by the TILA Rescission Notice, and there was no Notice of Default legally in existence upon which to foreclose and that DEFENDANTS are legally barred and prohibited from conducting a Nonjudicial Foreclosure of the Loans, Notes, and Trust Deeds, and are legally barred and prohibited from conducting the purported Foreclosure Sale and causing issuance of the Trustee's Deed.

284.   DEFENDANTS nonetheless commenced, maintained, and are attempting to complete the Foreclosure and committed the Nonjudicial Foreclosure Statutes (California Civil Code Sections: 2924 et seq.) Violations and refused to comply with the mandatory requirements of TILA, HOEPA, and Regulation Z as set forth herein, including but not limited to delivering the Monetary Payment and the Trust Deed Reconveyances to PLAINTIFF.

285.   As a result, the preceding, the purported Foreclosure, attempted Foreclosure Sale and Foreclosure Trustee's Deed are at all times null and void ab initio and of no legal effect whatsoever.

286.   As a direct and proximate result of the above-described actions and conduct constituting WRONGFUL FORECLOSURE, PLAINTIFF is entitled to judgment against DEFENDANTS for Wrongful Foreclosure, and for judgment canceling, setting aside, and vacating the Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed and any attempts to evict PLAINTIFF.

## TWENTY-NINTH CAUSE OF ACTION

### BREACH OF CONTRACT

#### (As against all Defendants)

287.   PLAINTIFF repeats and re-alleges each and every allegation contained in paragraphs above inclusive and incorporates s same as though set forth at length.

288.   PLAINTIFF alleges there was no fair and reasonable consideration. The loan originators knew about the cognovits clauses in the loan documents but never provided fair consideration. Successors of the loan originators must make restitution and cannot benefit from the misrepresentations and fraud committed against the PLAINTIFF.

289.   PLAINTIFF has performed all conditions and covenants, and promises required by them to be performed in accordance with the terms and conditions of the alleged agreement.

290.   By reason of DEFENDANTS' nondisclosure of the cognovit clauses, misrepresentation and lack of contractual consent in the alleged contract, the contract is void, unenforceable, and PLAINTIFF has suffered damages in excess of the sum of $519,200.00 which is to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as follows:

1.   For Compensatory Damages in an amount to be determined by proof at trial.

2.   For Special Damages in an amount to be determined by proof at trial.

3.   For General Damages in an amount to be determined by proof at trial.

4.   For Treble Damages in an amount to be determined by proof at trial.

5.   For Punitive Damages as against the individual DEFENDANTS.

6.   For Attorney's Fees and Costs of this action.

7.   For a declaration that DEFENDANTS deceived PLAINTIFF into signing a cognovit note;

8. For a declaration that the securitization of their loan documents severed the chain of title and proves that no DEFENDANTS could execute the power of sale and had no standing to foreclose;

9. For a Declaration that the alleged contract is void;

10. For a Declaration ordering the DEFENDANTS return the original loan documents, and all monies paid by the PLAINTIFF, all interest and monies accrued from the securitization of loan documents in an amount according to proof at trial;

11. For a Declaration ordering the returning of title to Subject Property to the PLAINTIFF as conveyed by the Deed determining that the PLAINTIFF is the sole owner of the Subject Property and the DEFENDANTS, and each of them, have no interest in the Subject Property;

12. For interest, at the rate of ten percent (10%) per annum from date of purchase of Subject Property, or the sum of $519,200.00 or other interest according to law.

13. For a RICO judgment award to the PLAINTIFF for three times the judgment amount established at trial; and

14. For Declaratory Relief, including a declaration that PLAINTIFF is the prevailing party.

15. For an Injunction, enjoining any foreclosure proceeding on the Subject Property; and rendering any foreclosure sale illegal.

16. For Quiet Title in PLAINTIFF'S name to the Subject Property as against DEFENDANTS and all persons with adverse claims and clouds on PLAINTIFF'S real property as no longer binding or enforceable;

17. For Recission.

18. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

19. Any other and further relief that the Court considers just and proper.

January 25, 2011

_Lorenzo Benitez_

LORENZO BENITEZ
PLAINTIFF *in pro per*

### VERIFCATION

I, <u>LORENZO BENITEZ,</u> the PLAINTIFF in the above-entitled action have read the foregoing complaint for damages and know the contents thereof. The facts and allegations contained therein are true and correct of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Los Angeles, California.

Dated: January 25, 2011

_____

LORENZO BENITEZ, In Pro Per

# EXHIBIT "A"

Station ID :FEWG



**This page is part of your document - DO NOT DISCARD**



# 20090947974

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/24/09 AT 08:00AM**

| FEES : | 15.00 |
|---|---|
| TAXES : | 0.00 |
| OTHER : | 0.00 |
| PAID : | 15.00 |



**L E A D S H E E T**



209906240160011

00000752299



002170397

**SEQ:**
**25**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

T35

LOS ANGELES, CA  Document:ND 2009.947974

Page:1 of 3

Printed on:12/9/2010 9:42 AM

Branch :S01,User :3731                                              Station ID :FEWG



06/24/2009
*20090947974*

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

Space above this line for Recorder's use

TS No.: **CA-09-279878-PJ**              Loan No.: **1008830679**

09 0328556

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$15,541.73** as of 6/22/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**One West Bank FSB**
**C/O Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

Branch :S01,User :3731                                                     Station ID :FEWG

TS No.: CA-09-279876-PJ
Loan No.: 1008830679
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 11/17/2006, executed by LORENZO  BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK, A FEDERAL SAVINGS BANK, as beneficiary, recorded 11/29/2006, as Instrument No. 06 2639670, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein:  **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $519,200.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The installments of principal and interest which became due on 2/1/2009, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 6/22/2009              Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
                              BY: LSI Title Company

                                        Anselmo Pagkaliwangan

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT "B"

Branch :S01,User :3731  Station ID :FEWG

This page is part of your document - DO NOT DISCARD





## 20091470106

**Pages: 0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/28/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**LEADSHEET**



200909280220009

**00001260212**



002330889

**SEQ: 19**

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

T35



LOS ANGELES, CA Document:NT 2009.1470106

Page:1 of 3

Printed on:12/9/2010 9:42 AM

Branch :S01,User :3731                                                                    Station ID :FEWG

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



09/28/2009

*20091470106*

0903285550
TS # CA-09-279878-PJ                                     SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/17/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     **LORENZO  BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**
Recorded:       **11/29/2006 as Instrument No. 06 2639670 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California;**

Date of Sale:   **10/15/2009 at 10:30 AM**
Place of Sale:  **At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650**
Amount of unpaid balance and other charges: **$543,369.89**
The purported property address is:      **1144-1146  E 23RD STREET
                                        LOS ANGELES, CA 90011**

Assessors Parcel No. **5131-020-018**

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to OneWest Bank, FSB 2900 Esperanza Crossing Austin TX 78758

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 .

Branch :S01,User :3731                                                          Station ID :FEWG

*3*

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 9/25/2009

**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 714-730-2727 or Login to: www.fidelityasap.com**
**Reinstatement Line: (877) 908-4357**

Quality Loan Service Corp. by: Tere Camacho, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Branch :S01,User :3731                                                                Station ID :FEWG



**This page is part of your document - DO NOT DISCARD**



## 20101511310

**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/22/10 AT 08:00AM**

| | |
|---|---|
| **FEES:** | 21.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **PAID:** | 21.00 |



**L E A D S H E E T**



201010220150003

00003162352

002953569

**SEQ:
14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T35

LOS ANGELES, CA  Document:NT 2010.1511310

Page:1 of 3

Printed on:12/9/2010 9:42 AM

Branch :S01,User :3731                                                                        Station ID :FEWG

Recording requested by:
Quality Loan Service Corp.



When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

---

TS # CA-09-279878-PJ          Order # 090328556-CA-GTO          SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/17/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):    **LORENZO BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**
Recorded:    11/29/2006 as Instrument No. 06 2639670 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California;

Date of Sale:    **11/12/2010 at 10:30 AM**
Place of Sale:    **At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650**
Amount of unpaid balance and other charges:  **$584,340.69**
The purported property address is:    **1144-1146 E 23RD STREET**
    **LOS ANGELES, CA 90011**

Assessors Parcel No. **5131-020-018**

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to OneWest Bank, FSB 2900 Esperanza Crossing Austin TX 78758.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has not obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does apply to this notice of sale.

---

LOS ANGELES, CA  Document:NT 2010.1511310          Page:2 of 3

Printed on:12/9/2010 9:42 AM

3

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 10/18/2010                Quality Loan Service Corp.
                                2141 5th Avenue
                                San Diego, CA 92101
                                619-645-7711 For NON SALE information only
                                Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
                                Reinstatement Line: (877) 908-4357

                                Quality Loan Service Corp. by: Ronald Alonzo, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT "C"

Branch :S01,User :3731  Station ID :FEWG

**This page is part of your document - DO NOT DISCARD**



# 20101429156



Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**10/06/10 AT 02:56PM**

Pages:
0002

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201010060020080

00003072859

002921694

**SEQ:**
**01**

**DAR - Counter (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

Branch :S01,User :3731                                                                                      Station ID :FEWG

10/06/2010

*20101429156*

Recording Requested by: Orion Financial Group, Inc.

PLEASE FORWARD RECORDED DOCUMENT TO:
CITIMORTGAGE, INC.
c/o Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

### Assignment of Deed of Trust          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
SOLELY AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK G4318
Miller Road, Flint, MI 48507 (Assignor) by these presents does assign and set over, without recourse, to CITIMORTGAGE,
INC. 4050 Regent Blvd., Mail Stop N2A-222, Irving, TX 75063 (Assignee) the described deed of trust; together with certain
note(s) described with all interest, all liens, any rights due or to become due thereon, executed by LORENZO BENITEZ, A
MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ('MERS') SOLELY AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED
SAVINGS BANK.    Said deed of trust Dated: 11/17/2006 is recorded in the State of CA, County of Los Angeles on
11/29/2006, Document 20062639671 AMOUNT: $ 129,800.00    Property Address: 1144-1146 EAST 23RD STREET, LOS
ANGELES, CA 90011

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its
proper officer. Executed on: September 15, 2010 .
          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR INDYMAC
          BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
By:

M. Mathews, Vice President

BENITEZ  KL  *10035864*

State of Texas, County of Tarrant
          Before me, J. Flores, Notary Public, personally appeared, M. Mathews, Vice President known to me to be the person(s)
whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.
Given under my hand and seal of office on 09/15/2010.

J. FLORES
Notary Public, State of Texas
My Commission Expires
October 28, 2013

Notary public, J. Flores
My commission expires: October 28, 2013

771284875 MIN 100055401243621754 MERS Phone

888-679-6377

CA  Los Angeles                          CMI/KBKRP/STRATPOC/A



**This page is part of your document – DO NOT DISCARD**



# 20091157991



Pages:
0003

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/29/09 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 15.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 15.00 |



**L E A D S H E E T**



200907290170015

00000957483



002233469

**SEQ:**
**21**

**DAR – Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

T35

LOS ANGELES, CA Document:AS 2009.1157991

Page:1 of 3

Printed on:12/9/2010 9:42 AM

Branch :501,User :3731                                                        Station ID :FEWG



Recording requested by:

When recorded mail to:

One West Bank FSB
6900 Beatrice Drive
Kalamazoo, MI 49009


07/29/2009

*20091157991*

Space above this line for recorder's use

TS # CA-09-279878-PJ          Order # 090328556-CA-GTO          Loan # 1006830679
MERS MIN No.:                                                   Investor No. 331479885
100055401243621747

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**OneWest Bank FSB**

all beneficial interest under that certain Deed of Trust dated **11/17/2006** executed by **LORENZO
BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as Trustor(s) to **INVESTORS
TITLE COMPANY**, as Trustee and recorded as Instrument No. **06 2639670**, on **11/29/2006**, in Book xxx,
Page xxx of Official Records, in the office of the County Recorder of **LOS ANGELES** County, CA together
with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under
said Deed of Trust.

Page 1 of 2



LOS ANGELES, CA  Document:AS 2009.1157991                                      Page:2 of 3

Printed on:12/9/2010 9:42 AM

3

Effective Date: 5/6/2009 3:01 PM

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
INC., AS NOMINEE FOR INDYMAC BANK, F.S.B., A
FEDERALLY CHARTERED SAVINGS BANK, A
FEDERAL SAVINGS BANK

By:   JC San Pedro
Authorized Signatory

State of    TX
County of   Williamson

Sheena M. Gordon

On 7-20-09 before me, ~~Sheena Gordon~~ SMG , a notary public
,personally appeared    JC San Pedro , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of   TX   that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   notary public   (Seal)

SHEENA M. GORDON
Notary Public, State of Texas
My Commission Expires
December 16, 2012

Page 2 of 2

INVESTORS TITLE COMPANY

*14137504-39*

Recording Requested By:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*



11/29/06

20062639670

And When Recorded Mail To:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
BLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*
KANSAS CITY, MO 64131

*[City, State Zip Code]*

_____ *[Space Above This Line For Recording Data]* _____

# DEED OF TRUST

**MIN:  100055401243621747**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated      November 17, 2006 together with all Riders to this document.

(B)    "Borrower" is   LORENZO BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

                                                        .  Borrower is the trustor under this Security Instrument.

(C)    "Lender" is   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a                    Federal Savings Bank                organized and existing under the laws of
United States of America                      .  Lender's address is     155 NORTH LAKE
AVENUE, PASADENA, CA 91101

(D)    "Trustee" is   INVESTORS TITLE COMPANY

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 1 of 13                         14301CA 08L00
www.compliancesource.com                                                        © 2000, The Compliance Source, Inc.

(F)     **"Note"** means the promissory note signed by Borrower and dated    November 17, 2006    . The Note states that Borrower owes Lender    five hundred nineteen thousand two hundred and NO/100ths                             Dollars (U.S. $ 519,200.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    December  1, 2036    .

(G)     **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)     **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)     **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) *[specify]* | | |

(J)     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)     **"Escrow Items"** means those items that are described in Section 3.

(N)     **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)     **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)     **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)     **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT              MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                           Page 2 of 13                    14301CA 6/8.00
www.compliancesource.com                                                            © 2000, The Compliance Source, Inc.

LOS ANGELES, CA  Document:TD 2006.2639670                                    Page:2 of 29

Printed on:12/9/2010 9:42 AM

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the           County           of   LOS ANGELES         :

                                                    *[Type of Recording Jurisdiction]*      *[Name of Recording Jurisdiction]*
     SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number:     5131020018

which currently has the address of              1144-1146 EAST 23RD STREET
                                                    *[Street]*
     LOS ANGELES            , California          90011               ("Property Address"):
          *[City]*                                  *[Zip Code]*

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
     Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
     Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                         Page 3 of 13                                      1430CA 08/00
www.compliancesource.com                                                                   © 2000, The Compliance Source, Inc.

Branch :S01,User :3731                                                                                          Station ID :FEWG

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               MERS Modified Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                           Page 4 of 13                         14301CA  08/00
www.compliancesource.com                                       © 2000, The Compliance Source, Inc.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

**Loan No: 124362174**

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 5 of 13                                   14385CA 08/00
www.compliancesource.com                                                                              © 2000, The Compliance Source, Inc.

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 6 of 13                                                 14301CA 08/00
www.compliancesource.com                                                                                 © 2000, The Compliance Source, Inc.

Branch :S01,User :3731                                                                    Station ID :FEWG

obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                  Page 7 of 13                                    1430CA 08/00
www.compliancesource.com                                                                         © 2000, The Compliance Source, Inc.

Branch :S01,User :3731                                                                                                    Station ID :FEWG

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

<u>Loan No: 124362174</u>

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                              MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                                          Page 8 of 13                                                          14381CA 08/00
www.compliancesource.com                                                                                                                                      © 2000, The Compliance Source, Inc.

Printed on:12/9/2010 9:42 AM

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                 MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 9 of 13                                               14301CA  00X/00
www.compliancesource.com                                                                                               © 2000, The Compliance Source, Inc.

Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                 Page 10 of 13                        1430ICA 00K00
www.compliancesource.com                                                                © 2000, The Compliance Source, Inc.

Branch :S01,User :3731                                                                 Station ID :FEWG

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 11 of 13                              14301CA 08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

Branch :S01,User :3731                                                    Station ID :FEWG

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
LORENZO BENITEZ                        -Borrower
                                      [Printed Name]

_____ (Seal)
                                      -Borrower
                                      [Printed Name]

_____ (Seal)
                                      -Borrower
                                      [Printed Name]

_____ (Seal)
                                      -Borrower
                                      [Printed Name]

_____ [Acknowledgment on Following Page] _____

Loan No: 124362174
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 12 of 13                                    14301CA 08/00
www.compliancesource.com                                                                        © 2000, The Compliance Source, Inc.

LOS ANGELES, CA  Document:TD 2006.2639670                                              Page:12 of 29

Printed on:12/9/2010 9:42 AM

State of CALIFORNIA                         §
                                            §
County of  Los Angeles                      §
                                            §
On November 17, 2006, before me, George M. Gloria, Notary Public
personally appeared   LORENZO BENITEZ                                    [name and title of officer]

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)(is/are
subscribed to the within instrument and acknowledged to me that (he/she/they) executed the same in(his/her/their authorized
capacity(ies), and that by (his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____  (Seal)

GEORGE M. GLORIA
Commission # 1583429
Notary Public - California
Los Angeles County
My Comm. Expires May 29, 2009

## REQUEST FOR FULL RECONVEYANCE

**TO TRUSTEE:**

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of
the Recorder of _____ County, State of California, in book _____, page _____ of official records.
Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full.  You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty,
all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          Date:_____
            (Trustee)

Loan No: 124362174

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 13 of 13                              1430CA 08/00
www.compliancesource.com                                                                        © 2000, The Compliance Source, Inc.

LOS ANGELES, CA  Document:TD 2006.2639670                                          Page:13 of 29

Printed on:12/9/2010 9:42 AM

# 1-4 FAMILY RIDER
# (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   17th   day of        November,   2006      , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Note to    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the   "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

1144-1146 EAST 23RD STREET, LOS ANGELES, CA 90011

*[Property Address]*

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in Security Instrument, the following items now or hereafter attached to the Property to the
extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the
Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the
purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets,
sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property
covered by the Security Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family
Rider and the Security Instrument as the "Property."

**B.   USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make
a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.
Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body
applicable to the Property.

**C.   SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.   RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the
other hazards for which insurance is required by Section 5.

**E.   "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

Loan No: 124362174                                              MIN: 100055401243621747

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                         Page 1 of 3                         Form 3170 01/01
www.compliancesource.com                                                        14203MU 08/00 Rev. 11/04
                                                                              ©2004, The Compliance Source, Inc.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

Loan No: 124362174

| Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT | | Form 3170 01/01 |
|---|---|---|
| —THE COMPLIANCE SOURCE, INC.— | Page 2 of 3 | 14503SU 08/00 Rev. 11/04 |
| www.compliancesource.com | | ©2004, The Compliance Source, Inc. |

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
LORENZO BENITEZ              -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                           -Borrower                                  -Borrower


*[Sign Original Only]*

Loan No: 124362174
Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3170  01/01
—THE COMPLIANCE SOURCE, INC.—                                 Page 3 of 3              14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                              ©2004, The Compliance Source, Inc.

LOS ANGELES, CA  Document:TD 2006.2639670                                            Page:16 of 29

Printed on:12/9/2010 9:42 AM

Exhibit "A"

All that certain real property in the County of LOS ANGELES, State of California, described as follows:

LOT 77 OF GRIDER AND DOW'S ORANGEDALE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59, PAGE(S) 29 AND 30 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, ALL RIGHT, TITLE AND INTEREST IN AND TO THAT CERTAIN SUBSURFACE OIL AND GAS LEASE, DATED OCTOBER 23, 1968, WITH STANDARD OIL COMPANY OF CALIFORNIA, A CORPORATION, RECORDED DECEMBER 20, 1968, IN BOOK M-3076, PAGE(S) 230, OFFICIAL RECORDS.

legal rev. (010698)

# FIXED/ADJUSTABLE RATE RIDER
# INTEREST ONLY PERIOD
### (1-Year LIBOR Index – Rate Caps)
### (Assumable after Initial Period)
### ( 10 Year Interest Only Period)

Loan #      124362174                          MIN:      100055401243621747

THIS ADJUSTABLE RATE RIDER is made this 17th day of November, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1144–1146 EAST 23RD STREET, LOS ANGELES, CA 90011

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of          6.625      %. The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of          December, 2011 and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

IndyMac Bank
Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period - Multistate
                                         Page 1 of 5                          Form 5601
8480831  (0506)       VMP Mortgage Solutions, Inc. (800)521-7291                 6/05

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                    percentage point(s) (        2.750      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     11.625    % or less than     2.750     %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two and NO/1000ths                                    percentage point(s) (        2.000      %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than               11.625 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Loan No: 124362174
8480831  (0506)



Page 2 of 5

Form 5601
6/05

LOS ANGELES, CA  Document:TD 2006.2639670

Printed on:12/9/2010 9:42 AM

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
**1.   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **2.   AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan No: 124362174
8480831  (0506)                    Page 3 of 5

Form 5601
6/05

LOS ANGELES, CA  Document:TD 2006.2639670                              Page:20 of 29

Printed on:12/9/2010 9:42 AM

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: 124362174
8480831 (0506)

Page 4 of 5

Form 5601
6/05

Branch :SUI,User :3731                                                        Station ID :FEWG

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
LORENZO BENITEZ                   -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

Loan No: 124362174
8480831 (0506)                    Page 5 of 5                        Form 5601
                                                                     6/05

LOS ANGELES, CA  Document:TD 2006.2639670                            Page:22 of 29

Printed on:12/9/2010 9:42 AM

Branch :S01,User :3731                                                                Station ID :FEWG

# ADDENDUM TO FIXED/ADJUSTABLE RATE RIDER

Loan #:     124362174

THIS ADDENDUM to the Fixed/Adjustable Rate Rider is made this    17th    day of November,    2006       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") and Fixed/Adjustable Rate Rider of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1144-1146 EAST 23RD STREET, LOS ANGELES, CA 90011

[Property Address]

ADDITIONAL COVENANTS. In Addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**1. Section 4(D) of the Fixed/Adjustable Rate Rider is modified as follows:**

The interest rate I am required to pay at the first Change Date will not be greater than    11.625    % or less than    2.750       %. Thereafter, my interest rate will never be increased or decreased on any single change Date by more than two and NO/1000ths             percentage point(s) (    2.000       %) from the rate of interest I have been paying for the preceding    12    months. My interest rate will never be greater than    11.625    % or less than    2.750       %.

**IndyMac Bank**
**ARM Addendum to Fixed/Adjustable Rate Rider**
**Multistate**

8480345  (0602)                    Page 1 of 2
                     VMP Mortgage Solutions, Inc.

1075
2/06

Branch :S01,User :3731                                                    Station ID :FEWG

2. All other provisions of the Fixed/Adjustable Rate Rider are unchanged by this Addendum and remain in full force and effect.

Dated: ___11/17/06_____

_Lorenzo Benitez_____ (Seal)          _____ (Seal)
LORENZO BENITEZ              -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                            -Borrower

                                                                    I075
8480345  (0602)                    Page 2 of 2                      2/06

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   17th   day of   November,   2006   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK                        (the   "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

1144—1146 EAST 23RD STREET, LOS ANGELES, CA 90011
*[Property Address]*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.   USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.   SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.   RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.   "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

Loan No:  124362175                                              MIN:  100055401243621754

Multistate 1-4 Family Rider— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3170 01/01
—The COMPLIANCE SOURCE, INC.—                          Page 1 of 3                                              14843MU 08/00 Rev. 11/04
www.compliancesource.com                                                                            ©2001, The Compliance Source, Inc.

Branch :S01,User :3731                                                                                          Station ID :FEWG

**F.   BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.   ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower:  (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower.  However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

Loan No:  124362175

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3170  01/01
—THE COMPLIANCE SOURCE, INC.—                                         Page 2 of 3                          14503J1U 03/00 Rev. 11/04
www.compliancesource.com                                                                                  ©2004, The Compliance Source, Inc

LOS ANGELES, CA  Document:TD 2006.2639670                                                                Page:26 of 29

Printed on:12/9/2010 9:42 AM

Branch :S01,User :3731                                                        Station ID :FEWG

**I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
LORENZO BENITEZ                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

Loan No:  124362175
Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3          14503IL 08/00 Rev. 11/04
www.compliancesource.com                                              ©2004, The Compliance Source, Inc.

Branch :501,User :3731                                                                                   Station ID :FEWG

**BALLOON RIDER**                         MIN: 100055401243621754
(To be attached to the Security Instrument.)      Loan #: 124362175

THIS RIDER is made this   17th   day of   November,   2006   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1144-1146 EAST 23RD STREET, LOS ANGELES, CA 90011
[Property Address]

ADDITIONAL COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Balloon Rider: Borrower is aware that this loan is due and payable in full on the 1st   day of   December,   2021   , with a Balloon Payment of $   106,385.35   , based upon scheduled payments. Borrower acknowledges and agrees that Lender has not made any representations to Borrower, either oral or written, that Lender will subordinate its lien created by this Security Instrument to any other lien which the Property may hereafter become subject to, including, without limitation, any lien arising from Borrower's subsequent construction of improvements on the Property. Borrower acknowledges and agrees that Lender is under no obligation to subordinate its lien created by this Security Instrument to any lien created hereafter and Lender does not intend to subordinate its lien to any other lien which the Property may hereafter become subject to.

8480056 (9805)                    Page 1 of 2                      FORM INDYMAC 153
                       ELECTRONIC LASER FORMS, INC. • (800)327-0545            9/26/05

LOS ANGELES, CA  Document:TD 2006.2639670                          Page:28 of 29

Printed on:12/9/2010 9:42 AM

Branch :SUI,User :3731                                                      Station ID :FEWG

IN WITNESS WHEREOF, Borrower has executed this Balloon Rider and fully understands the conditions thereof.

Date: _____11/20/06_____

_____ (Seal)          _____ (Seal)
LORENZO BENITEZ          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

Loan No: 124362175
-8480056 (0806)                     Page 2 of 2              FORM INDYMAC 153
                                                                9/26/85

INVESTORS TITLE COMPANY

14137504-39

Recording Requested By:
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

*[Company Name]*

11/29/06

20062639671

And When Recorded Mail To:
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

*[Company Name]*

*[Name of Natural Person]*

BLDG B, 901 E 104TH ST, SUITE 400/500
*[Street Address]*

KANSAS CITY, MO 64131
*[City, State Zip Code]*

——————————— *[Space Above This Line For Recording Data]* ———————————

# DEED OF TRUST
## (Secondary Lien)

**DEFINITIONS**                                            **MIN:** 100055401243621754

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)    "Security Instrument" means this document, which is dated            November 17, 2006
together with all Riders to this document.

(B)    "Borrower" is LORENZO BENITEZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

.  Borrower is the trustor under this Security Instrument.

(C)    "Lender" is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a                    Federal Savings Bank                            organized and existing under the laws of
United States of America            , Lender's address is        155 NORTH LAKE AVENUE,
PASADENA, CA 91101

(D)    "Trustee" is INVESTORS TITLE COMPANY

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)    "Note" means the promissory note signed by Borrower and dated            November 17, 2006

Loan No: 124362175                                                          Initials: _____

California Deed of Trust–Single Family–Secondary Lien                                      MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 1 of 11              Modified By "The Compliance Source, Inc." 14142CA 08/02
www.compliancesource.com                                                           ©2002 The Compliance Source, Inc.

This deed of trust is subordinate to the deed
of trust recording concurrently herewith.

Station ID :FEWG

The Note states that Borrower owes Lender   one hundred twenty nine thousand eight hundred and NO/100ths                                            Dollars (U.S. $   129,800.00              ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    December  1, 2021

(G)      "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)      "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, if allowed under Applicable Law, and all sums due under this Security Instrument, plus interest.

(I)      "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Home Improvement Rider         ☐ Revocable Trust Rider
☒ Other(s) *[specify]*     ID: First/Second Lien Balloon Rider, 1-4 Family Rider

(J)      "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)      "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L)      "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)      "Escrow Items" means those items that are described in Section 3.

(N)      "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)      "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)      "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)      "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)      "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 124362175                                                                Initials:  _____
California Deed of Trust—Single Family—Secondary Lien
—THE COMPLIANCE SOURCE, INC.—                              Page 2 of 11                MERS Modified Form 3801 01/01
   www.compliancesource.com                                                      Modified By "The Compliance Source, Inc." 14182CA 02/02
                                                                                  ©2002, The Compliance Source, Inc

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          LOS ANGELES
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number:     5131020018

which currently has the address of                         1144–1146 EAST 23RD STREET
                                                                                [Street]
          LOS ANGELES          , California          90011          ("Property Address"):
          [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.     Payment of Principal, Interest and Other Charges.   Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and if allowable under Applicable Law, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:   (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
2.     Application of Payments or Proceeds.   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied in the following order of priority:   (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining

<u>Loan No: 124362175</u>
California Deed of Trust–Single Family–Secondary Lien                                                                    MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—                                             Page 3 of 11          Modified By "The Compliance Source, Inc." 14192CA 03/02
          www.compliancesource.com                                                                            F3802 The Compliance Source  In

Exhibit "A"

All that certain real property in the County of LOS ANGELES, State of California, described as follows:

LOT 77 OF GRIDER AND DOW'S ORANGEDALE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59, PAGE(S) 29 AND 30 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, ALL RIGHT, TITLE AND INTEREST IN AND TO THAT CERTAIN SUBSURFACE OIL AND GAS LEASE, DATED OCTOBER 23, 1968, WITH STANDARD OIL COMPANY OF CALIFORNIA, A CORPORATION, RECORDED DECEMBER 20, 1968, IN BOOK M-3076, PAGE(S) 230, OFFICIAL RECORDS.

legal rev. (010698)

amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**   Subject to Applicable Law, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:   (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums.   These items are called "Escrow Items."   At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.   Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.   Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.   Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.   Any such waiver may only be in writing.   In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.   Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8.   If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount.   Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.   Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.   Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.   Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.   Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.   Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.   Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.   If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.   If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.   Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.   If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**Loan No: 124362175**

California Deed of Trust—Single Family—Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 4 of 11

MERS Modified Form 3801   01/01
Modified By "The Compliance Source, Inc." 14192VA  03/02
©2002, The Compliance Source, Inc

Branch :S01,User :3731                                                                                    Station ID :FEWG

   4.   **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.   To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in. legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan if allowed under Applicable Law.

   5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5. shall be added to the unpaid balance of the loan and interest shall accrue at the Note rate, from the time it was added to the unpaid balance until it is paid in full.

   Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened,

_____

Loan No: 124362175

California Deed of Trust–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com                          Page 5 of 11

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 14102CA 08/03
©2002, The Compliance Source, Inc

the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7.   **Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9.   **Mortgage Insurance.**   If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

10.   **Assignment of Miscellaneous Proceeds; Forfeiture.**   If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such

Loan No: 124362175

California Deed of Trust–Single Family–Secondary Lien                                      MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—                           Page 6 of 11           Modified By "The Compliance Source, Inc." 14302CA 03/02
www.compliancesource.com                                                        ©2002, The Compliance Source, Inc.

Branch :S01,User :3731                                                        Station ID :FEWG

Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums

Loan No: 124362175

California Deed of Trust–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com                        Page 7 of 11        MERS Modified Form 3801 01/01
                                                                     Modified By "The Compliance Source, Inc." 14162CA 02/03
                                                                     ©2003, The Compliance Source, Inc.

already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result

Loan No: 124362175

California Deed of Trust–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 8 of 11

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 11010 1 01/01

in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this

**Loan No: 124362175**

<table>
<tr><td>California Deed of Trust--Single Family--Secondary Lien<br>—THE COMPLIANCE SOURCE, INC.—<br>www.compliancesource.com</td><td>Page 9 of 11</td><td>MERS Modified Form 3801 01/01<br>Modified By "The Compliance Source, Inc." 14193CA 02/02<br>©2002, The Compliance Source, Inc.</td></tr>
</table>

Branch :S01,User :3731                                                                              Station ID :FEWG

notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

25. **Request for Notice of Default and Sale.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded

N/A                                    , in Book     N/A                        page      N/A                    records of
LOS ANGELES                  County, (or filed for record with recorder's serial number          N/A
LOS ANGELES                  County) California, executed by          N/A
                                                                                                                                 as trustor

(or mortgagor) in which     N/A

is named as beneficiary (or mortgagee) and          N/A
                                                                                                                                 as trustee
be mailed to Name:     INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK          at

Address     155 NORTH LAKE AVENUE, PASADENA, CA 91101


Notice: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.


Signature _____

                              REQUEST FOR NOTICE OF DEFAULT
               ————————— AND FORECLOSURE UNDER SUPERIOR —————————
                              MORTGAGES OR DEEDS OF TRUST


**Loan No: 124362175**
California Deed of Trust–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—                                    Page 10 of 11                    MERS Modified Form 3800  01/01
www.compliancesource.com                                                                                     Modified By "The Compliance Source, Inc." 14102CA  8/07
                                                                                                                        ©2002, The Compliance Source, Inc.

Branch :SUI,User :3731                                                           Station ID :FEWG

Borrower and Lender request the holder of any mortgage, deed of trust, or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____         _Lorenzo Benitez_____ (Seal)
                                       LORENZO BENITEZ              -Borrower
Printed Name: _____                               [Printed Name]
              [Please Complete]

                                       _____ (Seal)
                                                                   -Borrower
_____                                      [Printed Name]
Printed Name: _____
              [Please Complete]

                                       _____ (Seal)
                                                                   -Borrower
                                                                   [Printed Name]

                                       _____ (Seal)
                                                                   -Borrower
                                                                   [Printed Name]

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of CALIFORNIA                              §
                                                 §
County of Los ANGELES                            §

On NOVEMBER 20, 2006 before me, GEORGE M. GLORIA, NOTARY PUBLIC         , personally appeared
LORENZO BENITEZ

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) (is) subscribed to the within instrument, and acknowledged to me that (he/she/they) executed the same in (his/her/their) authorized capacity(ies), and that by (his/her/their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

(Seal)        GEORGE M. GLORIA          _George M. Gloria_____
              Commission # 1583428      Notary Public   GEORGE M. GLORIA   (Printed Name)
              Notary Public - California
              Los Angeles County         My Commission Expires:
              My Comm. Expires May 29, 2007
                                         MAY 29, 2007

Loan No: 124362175
California Deed of Trust–Single Family–Secondary Lien                     MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—                      Page 11 of 11      Modified By "The Compliance Source, Inc." 141101CA 02/02
    www.compliancesource.com                                         ©2002, The Compliance Source, Inc

LOS ANGELES, CA  Document:TD 2006.2639671                                        Page:12 of 12

Printed on:12/9/2010 9:42 AM

# EXHIBIT "D"



**This page is part of your document - DO NOT DISCARD**

# 06 2639669

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

## 11/29/06 AT 08:00AM

TITLE(S) :  DEED



```
L E A D   S H E E T
```

| | | |
|---|---|---|
| **FEE** | | **D.T.T.** |
| Code 01 - 07.00 | Code D003 - 001 | Code 080 - 713.90 |
| Code 18 - 04.00 | | Code 044 - 2920.50 |
| Code 95 - 10.00 | | |

**CODE 20**

**CODE 19**

**CODE 9_____**   Grand Total = $3,655.40    Page Count = 1

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

5 1 3 1  ·  0 2 0  ·  0 1 8              0 0 1



**THIS FORM IS NOT TO BE DUPLICATED**

INVESTORS TITLE COMPANY
14137 #39

RECORDING REQUESTED BY:
Las Flores Escrow Inc.

AND WHEN RECORDED MAIL TO:

Lorenzo Benitez
1144-1146 East 23rd Street
Los Angeles, CA 90011

Order No. 14137504
Escrow No. 31496-CO
Parcel No. 5131-020-018

5131-020-018

11/28/06



**20062639669**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED THAT DOCUMENTARY TRANSFER TAX IS $713.90 and CITY $ 2,920.50

☑ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area: ☐ , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Diamond Properties/Developments Inc., a California Corporation

hereby GRANTS to Lorenzo Benitez, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

the following described real property in the County of Los Angeles, State of California:

Lot 77, of Grider and Dow's Orangedale Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 59, Page(s) 29 and 30 of Miscellaneous Records, in the office of the County Recorder of said County.

Also, all right, title and interest in and to that certain Subsurface Oil and Gas Lease, dated October 23, 1968, with Standard Oil ad Gas Company of California, a corporation, recorded December 20, 1968, in Book M-3076, Page 230, and Official Records.

Date    September 6, 2006

Diamond Properties/Developments Inc.,

By: David Vivanco, Members

STATE OF CALIFORNIA    }
                        } S.S.
COUNTY OF Los Angeles  }

On November 21, 2006 , before me, Virginia Abitia, Notary Public,
personally appeared David Vivanco personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

VIRGINIA ABITIA
COMM # 1463234
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 18, 2008

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

14137504-39

11/29/06

20062639668

**RECORDING REQUESTED BY:**
Las Flores Escrow Inc.

**AND WHEN RECORDED MAIL TO:**

Lorenzo Benitez
1144-1146 East 23rd Street
Los Angeles, CA 90011

Order No. 14137504
Escrow No. 31496-CO
Parcel No. 5131-020-018

5131-020-018

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED THAT DOCUMENTARY TRANSFER TAX IS *NONE* and CITY
☐ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area: ☐ Los Angeles, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Maria Benitez, Spouse of Grantee

hereby GRANTS to Lorenzo Benitez, a Married Man as his sole and separate property

the following described real property in the County of Los Angeles, State of California:

Lot 77 of Grider and Dow's Orangedale Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 59, Page(s) 29 and 30 of Miscellaneous Records, in the office of the County Recorder of said County.
Also, all right, title and interest in and to that certain Subsurface Oil and Gas Lease, dated October 23, 1968, with Standard Oil Company of California, A Corporation, recorded December 20, 1968, in Book M-3076, Page(s) 230, and Official Records.

This conveyance establishes sole and separate property of a spouse, R & T 11911.

Date    November 17, 2006

*Maria Benitez*
Maria Benitez

STATE OF CALIFORNIA      )
                         ) S.S.
COUNTY OF Los Angeles    )

On NOVEMBER 17, 2006, before me, GEORGE M. GLORIA NOTARY PUBLIC
personally appeared MARIA BENITEZ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *George M. Gloria*                    (Seal)

GEORGE M. GLORIA
Commission # 1683428
Notary Public - California
Los Angeles County
My Comm. Expires May 26, 2009

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

AND WHEN RECORDED MAIL TO:

Lorenzo Benitez
1144-1146 East 23rd Street
Los Angeles, CA  90011

Order No. 14137504
Escrow No. 31496-CO
Parcel No. 5131-020-018

11/29/06



2u062639669

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED   THAT DOCUMENTARY TRANSFER TAX IS $713.90 and CITY $ 2,920.50

☐ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area:   ☐ , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Diamond Properties/Developments Inc., a California Corporation

hereby GRANTS to   Lorenzo Benitez, A  MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

the following described real property in the County of Los Angeles, State of California:

Lot 77, of Grider and Dow's Orangedale Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 59, Page(s) 29 and 30 of Miscellaneous Records, in the office of the County Recorder of said County.

Also, all right, title and interest in and to that certain Subsurface Oil and Gas Lease, dated October 23, 1968, with Standard Oil nd Gas Company of California, a corporation, recorded December 20, 1968, in Book M-3076, Page 230, and Official Records.

Date   September 6, 2006

Diamond Properties/Developments Inc.,

By: David Vivanco, Members

STATE OF CALIFORNIA }
} S.S.
COUNTY OF LOS Angeles }

On November 21, 2006                 , before me, Virginia Abitia, Notary Public,
personally appeared David Vivanco personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____(Seal)

VIRGINIA ABITIA
COMM. # 1463234
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 16, 2008

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

LOS ANGELES, CA  Document:D 2006.2639669                                        Page:1 of 1

Printed on:12/9/2010 9:42 AM

# EXHIBIT 2

TS: CA-09-279878-PJ

SALE DATE: March 28, 2011

**CONFORMED COPY**
**OF ORIGINAL FILED**
Los Angeles Superior Court

1

Recording requested by:
LORENZO BENITEZ
And when recorded mail to:
LORENZO BENITEZ
10117 SEPULVEDA BOULEVARD, SUITE 207
MISSION HILLS, CA 91345

JUN 16 2011         MAY 16 2011

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SHAURYA WESLEY

2

3

------------------------------------------Space above line for Recorder's use------

4

LORENZO BENITEZ
10117 SEPULVEDA BOULEVARD, SUITE 207
MISSION HILLS, CA 91345
PHONE: (310) 594-2158

5

6

7

LORENZO BENITEZ
PLAINTIFF IN PRO PER

8

9

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

10

BC461756

11

LORENZO BENITEZ, an individual,        )   Case No.:
                                        )
12                                       )
            Plaintiff,                   )   **NOTICE OF PENDENCY OF ACTION**
                                        )   [CCP § 405.20]
13                                       )
                                        )
14      vs.                              )
                                        )   Action filed:  May 16, 2011
15   ONEWEST BANK, FSB F/K/A INDYMAC     )
     BANK, FSB; INVESTORS TITLE          )
16   COMPANY, a Business Entity, form    )
     unknown; QUALITY LOAN SERVICE       )
17   CORP, a Business Entity, form unknown; )
     MORTGAGE ELECTRONIC                 )
18   REGISTRATION SYSTEMS, INC., A       )
     Delaware Corporation; and DOES 1 through )
19   50, inclusive                       )
                                        )
20          Defendants.                  )
                                        )
21                                       )
                                        )
22                                       )

05/31/2011

*20110748724*

COPY of Docum

................. ..................
Has not been compared with original.
Original will be returned when
processing has been completed.
LOS ANGELES COUNTY REGISTRAR - RECORDER

23

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24

**NOTICE IS HEREBY GIVEN** that the above-entitled action was filed in the above-

25

entitled court on May 16, 2011, by Plaintiff, LORENZO BENITEZ, an individual, against

1

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

1   Defendants ONEWEST BANK, FSB F/K/A INDYMAC BANK, FSB; INVESTORS TITLE

2   COMPANY, a Business Entity, form unknown; QUALITY LOAN SERVICE CORP, a Business

3   Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A

4   Delaware Corporation; and DOES 1 through 50, inclusive. The object of Plaintiff's Complaint is

5   to enjoin Defendants from selling, encumbering, removing, concealing, or otherwise transferring

6   the real property described herein.

7        The action is now pending and affects title or the right to possession of the real property

8   in the County of Los Angeles, California, commonly known as 1144 EAST 23RD STREET,

9   LOS ANGELES, CA 90011, which is identified in the Complaint of this action and is fully

10  described in the grant deed and legal description appended hereto as **Exhibit "A"** and

11  incorporated by reference.  Said property bears the Assessor's Parcel Number (APN) 5131-020-

12  018.

13

14

15

16  May 16, 2011        _Lo Ven zo Benitez_

17                       LORENZO BENITEZ, PLAINTIFF IN PRO PER

18

19

20

21

22

23

24

25

2

**PLAINTIFF'S COMPLAINT FOR DAMAGES, AND RESCISSION**

# EXHIBIT "A"

This page is part of your document - DO NOT DISCARD

**06 2639669**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**11/29/06 AT 08:00AM**

TITLE(S) :  **DEED**



L E A D     S H E E T

| FEE | | Code D003 - 001 | D.T.T. |
|---|---|---|---|
| | Code 01 - 07.00 | | Code 080 - 713.90 |
| | Code 18 - 04.00 | | Code 044 - 2920.50 |
| | Code 95 - 10.00 | | |

CODE
20

CODE
19

CODE
9_____     Grand Total = $3,655.40                    Page Count = 1

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.                **Number of AIN's Shown**

5 1 3 1 · 0 2 0 · 0 1 8                                  0 0 1

   THIS FORM IS NOT TO BE DUPLICATED

INVESTORS TITLE COMPANY
14137504439

RECORDING REQUESTED BY:
Las Flores Escrow Inc.

AND WHEN RECORDED MAIL TO:

Lorenzo Benitez
1144-1146 East 23rd Street
Los Angeles, CA 90011

Order No. 14137504
Escrow No. 31496-CO
Parcel No. 5131-020-018

11/29/06

20062639669

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED   THAT DOCUMENTARY TRANSFER TAX IS $713.90 and CITY $ 2,920.50
☐ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area:   ☐   , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Diamond Properties/Developments Inc., a California Corporation

hereby GRANTS to   Lorenzo Benitez, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

the following described real property in the County of Los Angeles, State of California:

Lot 77, of Grider and Dow's Orangedale Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 59, Page(s) 29 and 30 of Miscellaneous Records, in the office of the County Recorder of said County.

Also, all right, title and interest in and to that certain Subsurface Oil and Gas Lease, dated October 23, 1968, with Standard Oil ad Gas Company of California, a corporation, recorded December 20, 1968, in Book M-3076, Page 230, and Official Records.

Date   September 6, 2006

Diamond Properties/Developments Inc.,

By: David Vivanco, Members

STATE OF CALIFORNIA   }
                       } S.S.
COUNTY OF LOS Angeles  }

On November 21, 2006 _____, before me, Virginia Abitia, Notary Public,
personally appeared David Vivanco personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

VIRGINIA ABITIA
COMM # 1463234
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 16, 2008

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

# EXHIBIT 3

1  **Quality Loan Service Corporation**
   Julie O. Molteni, Esq. (SBN: 265133)
2  Joshua E. Moyer, Esq. (SBN: 259908)
   Corporate Counsel
3  2141 5th Avenue
   San Diego, CA  92101
4  Telephone:    (619) 645-7711 x. 2019
   Facsimile:     (619) 568-3518
5
   Corporate Counsel for
6  Quality Loan Service Corporation

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF LOS ANGELES**

10

| | |
|---|---|
| LORENZO BENITEZ, an individual, | Case No. BC461756 |
| Plaintiff, | **QUALITY'S DECLARATION OF NONMONETARY STATUS** |
| v. | **[Civil Code §2924l]** |
| ONEWEST BANK, FSB F/KA INDYMAC BANK, FSB; INVESTORS TITLE COMPANY, a Business Entity, form unknown; QUALITY LOAN SERVICE CORP, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A Delaware Corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

19       TO THIS HONORABLE COURT, TO ALL PARTIES AND TO THEIR ATTORNEYS

20  OF RECORD:

21       NOTICE IS HEREBY GIVEN THAT  Defendant, QUALITY LOAN SERVICE

22  CORPORATION ("Quality"), hereby submits the attached Declaration of Trustee's Nonmonetary

23  status pursuant to California Civil Code § 2924l.

24       Section 2924l provides in the pertinent part that:
         "[I]n the event that the trustee maintains a reasonable belief that it has
25       been named in the action or proceeding solely in its capacity as trustee,
         and not arising out of any wrongful acts or omissions on its part in the
26       performance of its duties as trustee then at any time, the trustee may file a
         declaration of nonmonetary status."
27

28

                                    1
              **QUALITY'S DECLARATION OF NONMONETARY STATUS**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 01 2011

John A. Clarke, Executive Officer/Cl

By
    RAUL SANCHEZ

1    Quality believes that it has been named in the above-entitled action solely in its capacity as

2 Trustee under the Deed of Trust, which is the subject of this action, executed by Plaintiff against

3 the real property commonly known as 1144-1146 East 23rd Street, Los Angeles, CA 90011.

4 Dated: June 29, 2011                              Respectfully submitted,
                                                    **QUALITY LOAN SERVICE CORP.**

5

6

7 By:_____
                                                    Julie O. Molteni, Esq.
8                                                   Joshua E. Moyer, Esq.
                                                    Corporate Counsel for
9                                                   Quality Loan Service Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
**QUALITY'S DECLARATION OF NONMONETARY STATUS**

1   **Quality Loan Service Corporation**
    Julie O. Molteni, Esq. (SBN: 265133)
2   Joshua E. Moyer, Esq. (SBN: 259908)
    Corporate Counsel
3   2141 5th Avenue
    San Diego, CA  92101
4   Telephone:   (619) 645-7711 x. 2019
    Facsimile:    (619) 568-3518
5
    Corporate Counsel for
6   Quality Loan Service Corporation

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **FOR THE COUNTY OF LOS ANGELES**

10

11  LORENZO BENITEZ, an individual,            Case No. BC461756

12                            Plaintiff,       **DECLARATION OF BOUNLET LOUVAN
                                               IN SUPPORT OF QUALITY'S**
13  v.                                         **DECLARATION OF NONMONETARY
                                               STATUS**
14  ONEWEST BANK, FSB F/KA INDYMAC
    BANK, FSB; INVESTORS TITLE
15  COMPANY, a Business Entity, form unknown;
    QUALITY LOAN SERVICE CORP, a
16  Business Entity, form unknown; MORTGAGE
    ELECTRONIC REGISTRATION SYSTEMS,
17  INC., A Delaware Corporation; and DOES 1
    through 50, inclusive,
18
                              Defendants.
19
          I, Bounlet Louvan, declare as follows:
20
          1.      I am the Foreclosure Legal Liaison and Former Trustee Sale Officer for Defendant
21
    Quality Loan Service Corp. ("Quality").   I make the following Declaration in support of its
22
    Nonmonetary Status.
23
          2.      If called to testify as a witness thereon, I could and would competently testify as to
24
    all the facts stated in this Declaration.
25
          3.      This Declaration is made pursuant to California Civil Code § 2924*l*.
26
          4.      Quality is a Trustee under a Deed of Trust dated November 17, 2006.  Said Deed
27
    of Trust is a secured lien on real property commonly known as 1144-1146 East 23rd Street, Los
28

                                               1
    **DECLARATION OF BOUNLET LOUVAN IN SUPPORT OF QUALITY'S NONMONETARY STATUS**
    CA11-5471

1   Angeles, CA 90011, and was filed for record on November 29, 2006 in the Los Angeles County

2   Recorder's Office as Instrument Number 06 2639670.

3       5.    Quality is named as a Defendant in this action solely in its capacity as Trustee

4   under the Subject Deed of Trust.  Further, it is Quality's reasonable belief that it has not been

5   named as a Defendant because of any acts or omissions on its part in the performance of its duties

6   as Trustee.

7       6.    The Complaint seeks causes of action believed to be directed at co-Defendants and

8   not the Trustee.  Quality believes it has been named simply as a nominal Defendant and that

9   Plaintiff is not seeking any monetary or other relief against it, other than as a necessary party for

10   the purposes of verifying acts taken and/or carrying out any necessary acts in accordance with its

11   position as Trustee under the Deed of Trust. The Complaint pleads causes of action for fraud,

12   violations of the Truth in Lending Act (TILA), and Rescission, believed to be directed at co-

13   Defendants and not the Trustee.  Quality Loan Service is not the originator of the loan, nor had

14   any involvement in the creation of the loan in question and therefore believes it is not responsible

15   for the Plaintiff's causes of actions in this matter.

16       7.    Plaintiff's Complaint also references an alleged breach of contract. The essential

17   elements to be plead in an action for breach of contract are (1) the existence of a contract; (2)

18   Plaintiff's performance of the contract or excuse for non-performance; (3) Defendant's breach of

19   the contract; and (4) the resulting damages to Plaintiff. The alleged breach of Contract that

20   Plaintiff complains of is between Plaintiff and the Beneficiary, and does not involve any breach

21   by Quality, who is merely following the directions of the Beneficiary pursuant to both the terms

22   of the contract as they relate to defaults and the appropriate statutory framework regarding

23   foreclosures.

24       8.    Additionally, Plaintiff's Complaint references an alleged breach of fiduciary duty.

25   However, a Trustee is not a fiduciary, and has no fiduciary duties to the Trustor. A Trustee's

26   agency is a passive one, for the limited purpose of conducting a sale in the event of the Trustor's

27   default or reconveying the property upon satisfaction of the debt. A Trustee therefore, while an

28   agent for both the Beneficiary and the Trustor, does not stand in a fiduciary relationship to either.

**DECLARATION OF BOUNLET LOUVAN IN SUPPORT OF QUALITY'S NONMONETARY STATUS**

CA11-5471

9.     Plaintiff's Complaint also references an alleged breach of the covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implied into every contract, and it requires that neither party do anything which will deprive the other of the benefits of the agreement. The implied covenant of good faith and fair dealing does *not* extend beyond the terms of the contract at issue. When the contract at issue is a deed of trust, the purpose of the contract is that the borrower will have the use of funds loaned on specific terms and the lender will have the right to a specified repayment that is secured by the deed of trust. Quality, as Trustee, was following the terms of the contract at the direction of the Beneficiary under the Deed of Trust.

10.     Further, Plaintiff asserts a cause of action under the Business and Professions Code § 17200. As stated, Quality believes that Plaintiff's complaint does not give rise to allegations that may impose liability upon the corporation for actions conducted within the scope of its qualified authority as agent or Trustee. Specifically, a § 17200 claim alleges that a claimed defendant performed an unlawful, unfair, and fraudulent business practice. A business practice, pursuant to the code, is deemed unlawful if it is forbidden by law. Thus, a Plaintiff who fails to establish a violation of the predicate or underlying cause of action also fails to allege that the business act is unlawful for unfair competition law. Plaintiff cannot succeed in his claims against Quality, as Quality, at all times relevant to this dispute, acted in a qualified capacity in conformance with its duties under both law and contract.

11.     , Moreover, Plaintiff's Complaint alleges that Quality failed to contact the borrower to explore alternatives to foreclosure. Under law, pursuant to California Civil Code § 2923.5, QUALITY is not a party required to make necessary contacts with the Plaintiff regarding his/her alternatives to foreclosure. Said communications are initiated by, (1) the beneficial interest holder, (2) the servicer, or (3) an authorized representative specifically empowered with requisite authority to initiate such communications. QUALITY has no power to initiate such communications with the borrower as such action falls outside of its authorized powers as Trustee. As stated *supra*, a Trustee has the limited duty to conduct a sale in the event of the Trustor's default or reconvey the property upon satisfaction of the debt. Therefore, loan modification efforts fall outside the purview of QUALITY's authority.

3

**DECLARATION OF BOUNLET LOUVAN IN SUPPORT OF QUALITY'S NONMONETARY STATUS**

CA11-5471

12.     Lastly, Plaintiff claims that Defendants are contractually bound pursuant to California Civil Code § 2923.6 to accept a loan modification. California Civil Code § 2923.6 makes no such substantial mandate, as such mandate would be an affront to longstanding principles of freedom of contract. Furthermore, Quality, as Trustee, lacks authority to evaluate or perform any substantive changes to the written loan agreement. As Trustee, Quality makes no claim for title or interest in the Subject Property, and merely advances foreclosure proceedings at the request of the beneficiary due to the default of the repayment obligations encapsulated within the Deed of Trust. As such, Plaintiff cannot maintain any claim for a loan modification against Quality, or any Defendant to this dispute

13.     The legal framework governing non-judicial foreclosures is codified in California Civil Code §§ 2924 – 2924i. When a trustee such as Quality records a Notice of Default at the direction of the beneficiary, the trustee incurs no liability for the amount provided by the beneficiary. Plaintiff's theory on who may and may not advance a trustee's sale or what they have to do prior to initiating a trustee's sale are outside of the scope of Civil Code § 2924 et. seq.

14.     Quality agrees to be bound by whatever order or judgment is issued by this Court regarding the Trustee, provided such order or judgment is nonmonetary relief only.

I declare under penalty of perjury under the laws of the State of California, that the foregoing its true and correct. Executed on June 30, 2011 at San Diego California.

By: _____
Bounlet Louvan
Foreclosure Legal Liaison for Defendant,
Quality Loan Service Corporation

4

**DECLARATION OF BOUNLET LOUVAN IN SUPPORT OF QUALITY'S NONMONETARY STATUS**

CA11-5471

1   **Quality Loan Service Corporation**
Julie O. Molteni, Esq. (SBN: 265133)
2   Joshua E. Moyer, Esq. (SBN: 259908)
Corporate Counsel
3   2141 5th Avenue
San Diego, CA  92101
4   Telephone:    (619) 645-7711 x. 2019
Facsimile:    (619) 568-3518
5

Corporate Counsel for
6   Quality Loan Service Corporation

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **FOR THE COUNTY OF LOS ANGELES**

10

11   LORENZO BENITEZ, an individual,     Case No. BC461756

12                   Plaintiff,   **PROOF OF SERVICE**

13   v.

14   ONEWEST BANK, FSB F/KA INDYMAC
BANK, FSB; INVESTORS TITLE
15   COMPANY, a Business Entity, form unknown;
QUALITY LOAN SERVICE CORP, a
16   Business Entity, form unknown; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
17   INC., A Delaware Corporation; and DOES 1
through 50, inclusive,
18

                  Defendants.
19

20                   **DECLARATION OF SERVICE**

21       I, Darlene Sandez, declare:

22       I am a resident of the United States and I am employed in the County of San Diego, State

23   of California; I am over the age of 18 years and not a party to this action; my business address is

24   2141 5th Avenue, San Diego, California 92101.

25       I further declare that I am readily familiar with the business practice of Quality Loan

26   Service Corporation for service of documents, that documents served by facsimile are transmitted

27   in and the original deposited with the United States Postal Service in our ordinary course of

28   business on the same day, the documents served by mail are deposited with the United States

CA11-5471

1  Postal Service in the ordinary course of business the same day and that documents served

2  personally are delivered the same day.

3      On June 30, 2011, at the direction of a member of the bar of this Court, I served the following

4  document(s):

5      • **QUALITY'S DECLARATION OF NONMONETARY STATUS;**

6      • **DECLARATION OF BOUNLET LOUVAN IN SUPPORT OF QUALITY'S**

7      **DECLARATION OF NONMONETARY STATUS.**

8

Lorenzo Benitez

9  10117 Sepulveda Boulevard
   Suite 207

10  Mission Hills, CA 91345

11
   *Plaintiff in Pro Per*

12
       in the following manner of service (check appropriate):

13
       __**XX**__      **BY MAIL:**  I placed a true copy in a sealed envelope addressed as

14  indicated above.  I am readily familiar with the firm's practice of collection and processing

15  correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the

16  ordinary course of business.  I am aware that on a motion of party served, service is presumed

17  invalid if postal cancellation date or postage meter date is more than one date after date of deposit

18  for mailing in affidavit.

19      I declare under penalty of perjury under the laws of the State of California, that the

20  foregoing is true and correct.  Executed on June 30, 2011 at San Diego, California.

21

22                                    By_____

23                                        Darlene Sandez

24

25

26

27

28

2

**PROOF OF SERVICE**

CA11-5471

# EXHIBIT 4

# Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC461756
LORENZO BENITEZ VS ONEWEST BANK FSB ET AL

**Filing Date:** 05/16/2011
**Case Type:** Mortgage Foreclosure (General Jurisdiction)
**Status:** Pending

---

**Future Hearings**

**09/13/2011** at 08:30 am in department 74 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Case Management

---

Documents Filed | Proceeding Information

**Parties**

BENITEZ LORENZO - Plaintiff & Plaintiff In Pro Per

DOES 1 THROUGH 50 - Defendant/Respondent

INDYMAC BANK FSB - Defendant/Respondent's AKA

INVESTORS TITLE COMPANY - Defendant/Respondent

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS - Defendant/Respondent

ONEWEST BANK FSB - Defendant/Respondent

QUALITY LOAN SERVICE CORP - Defendant/Respondent

---

Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**07/01/2011** Declaration (QUALITY'S DECLARATION OF NONMONETARY STATUS )
Filed by Attorney for Defendant/Respondent

**06/29/2011** Notice-Case Management Conference
Filed by Clerk

**05/16/2011** Complaint

---

Case Information  |  Party Information  |  Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

---

Case Information  |  Party Information  |  Documents Filed  |  Proceeding Information

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV11- 6063 JFW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □)<br>Lorenzo Benitez | DEFENDANTS<br>OneWest Bank, FSB F/K/A IndyMac Bank, FSB; Investors Title Company;<br>Quality Loan Service Corp; Mortgage Electronic Registration Systems, Inc.; and<br>DOES 1 through 50 |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Lorenzo Benitez, In Pro Per  10117 Sepulveda Boulevard, Ste 207<br>(310) 594-2158  Mission Hills, CA 91345 | Attorneys (If Known)<br><br>David C. Scott, Esq  McCarthy & Holthus, LLP<br>(619) 685-4800  1770 Fourth Avenue<br> San Diego CA 92101 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

□ 1 Original Proceeding  ☒ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify):  □ 6 Multi-District Litigation  □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** □ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** □ Yes  ☒ No  □ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1331 -- Plaintiffs' claims arise under the laws of the United States.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY / PERSONAL INJURY | TORTS PERSONAL | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 535 Death Penalty | |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 480 Consumer Credit | □ 151 Medicare Act | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 490 Cable/Sat TV | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 810 Selective Service | | □ 360 Other Personal Injury | □ 441 Voting | □ 610 Agriculture | □ 820 Copyrights |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 362 Personal Injury-Med Malpractice | □ 442 Employment | □ 620 Other Food & Drug | □ 830 Patent |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 365 Personal Injury-Product Liability | □ 443 Housing/Acco-mmodations | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 890 Other Statutory Actions | □ 190 Other Contract | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | | SOCIAL SECURITY |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | | □ 445 American with Disabilities - Employment | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | IMMIGRATION | □ 446 American with Disabilities - Other | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 893 Environmental Matters | REAL PROPERTY | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 894 Energy Allocation Act | □ 210 Land Condemnation | □ 463 Habeas Corpus-Alien Detainee | | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 895 Freedom of Info. Act | ☒ 220 Foreclosure | □ 465 Other Immigration Actions | | □ 690 Other | □ 865 RSI (405(g)) |
| □ 900 Appeal of Fee Determination Under Equal Access to Justice | □ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

# CV11-06063

**FOR OFFICE USE ONLY:**  Case Number _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact, or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| OneWest Bank FSB - Los Angeles | Mortgage Electronic Registration Systems, Inc. - Virginia |

(c)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH claim arose.
Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  7/22/11

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |